PER CURIAM.
This disciplinary proceeding against James W. Matthews is before us on complaint of The Florida Bar and report of the referee. No petition for review has been filed.
*1005 The referee made the following findings of fact as to Matthews’ misconduct:
FINDINGS OF FACT-COUNT I
1. In June 1978, Gladstone Williams, a client of Respondent, entrusted $78,300.00 to Respondent for purchase of homes and business ventures. In October 1978, Williams bought a home but Respondent’s trust account check was dishonored for insufficient funds. Respondent subsequently paid the sellers the purchase price, leaving a balance of $34,773.00 of Williams’ money entrusted to Respondent. After numerous unsuccessful demands by Williams, Williams obtained a civil judgment against Respondent for $50,773.00, which represented the balance of $34,773.00 of trust funds, punitive damages in the amount of $10,000 and attorney fees of $6,000. As of the date of this Report, no portion of said monies has been paid or reimbursed to [this] client.
2. Respondent, as answers and affirmative defenses, alleges that Internal Revenue Service and/or the Capital Bank placed “unauthorized holds” on his trust account. The clear and convincing evidence shows otherwise, but in any event, $15,000 of such trust funds were released but did not find their way to Mr. Williams, who had authorized no withdrawals without his consent. Respondent further claims he “invested foolishly” Williams’ money but cannot substantiate any such investment.
3. Respondent converted to his own use the unaccounted-for Williams’ monies which were withdrawn from Respondent’s trust account by checks payable to himself.
4. Respondent’s conversion and subsequent conduct towards his client caused severe hardship and injury to the client, including but not limited to:
A. loss of at least $34,773.00 plus interest to a man of modest means,
B. necessity of hiring another attorney to straighten out Farrow’s house sale and to obtain a judgment against Respondent.
FINDINGS OF FACT-COUNT II
1. Respondent represented Joseph Kelley in regard to Mr. Kelley’s one-half interest of a home to his ex-wife, Matlon Kelley.
2. Respondent received a total of $5,700.00 from the attorney for ex-wife, from which sum Respondent distributed $2,200.00 to Kelley, but refused for almost a year to distribute the balance of $3,300.00 to Kelley, even though the client made numerous demands on Respondent for the money.
3. Kelley further gave Respondent very specific instructions as to the date and the manner of the delivery of the deed evincing the one-half interest and of the time of relinquishing possession of the house by Kelley, all of which were disregarded by Respondent.
4. Respondent admitted misappropriating Kelley’s funds which had been entrusted to him and were used for Respondent’s use and benefit.
5. Respondent’s conduct caused serious damage and injury to Kelley in having to wait a year for the money and in having to make other living arrangements.
FINDINGS OF FACT-COUNT III
1. Respondent, as counsel for the Veterans Administration, closed the sale of 3 properties for the VA in March 1979.
2. Three checks issued on his trust account payable to the VA in October 1978-January 1979 as proceeds from the sales weré returned for insufficient funds. In March 1979, Respondent issued three other checks to cover the dishonored checks.
3. In December 1978, Respondent failed to remit to the VA the sum of $1,253.96 on [the] Brown closing and in February 1979, he failed to remit $1,031.64 to the VA on [the] Mondestin closing. In November 1979 Respondent made restitution on [the] Mondestin closing but to date no restitution has been made to the VA on the Brown closing.
*1006 4. Again Respondent’s allegation that the dishonoring of these checks was due to any improper levy by IRS is without merit.
5. Obviously, such conduct by Respon- ■ dent caused damage and injury to the VA, as custodian of the public’s monies. The referee recommends that Matthews
be found guilty of violating The Florida Bar Integration Rule, article XI, Rule 11.-02(4),[1] and The Florida Bar Code of Professional Responsibility, Disciplinary Rules 6-101(A)(3),[2] 7-101(A)(2) and (3),[3] and 9-102(B)(1), (2), (3), and (4)[4] and that he be disbarred.
We have reviewed the record and agree with the referee’s findings and recommendations of guilt. We also agree that Matthews’ reprehensible misconduct warrants disbarment.
Accordingly, James W. Matthews is hereby disbarred from the practice of law in Florida, effective immediately. Matthews is ordered to pay the costs of these proceedings in the amount of $1,221.50.
It is so ordered.
SUNDBERG, C. J., and ADKINS, BOYD, ALDERMAN and McDONALD, JJ., concur.

. Rule 11.02(4) provides in pertinent part:
(4) Trust funds and fees. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. . . .

. DR 6 — 101 (A)(3) provides:
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.

. DR 7-101(A)(2) and (3) provides in pertinent part:
(A) A lawyer shall not intentionally:
(2) Fail to carry out a contract of employment entered into with a client for professional services, . . .
(3) Prejudice or damage his client during the course of professional relationship, . ..

.DR 9-102(B)(l), (2), (3), and (4) provides:
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.