396 So.2d 733 (1981)
Albert W. TRESVANT, Sr., Appellant,
v.
The STATE of Florida, Appellee.
No. 78-2002.
District Court of Appeal of Florida, Third District.
March 13, 1981.
Rehearing Denied April 28, 1981.
*735 Harold C. Culmer, Miami, for appellant.
Jim Smith, Atty. Gen., and Anthony C. Musto and Steven R. Jacob, Asst. Attys. Gen., for appellee.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
We begin with the procedural history of this case.
In 1977, Albert W. Tresvant, Sr., Candido Giardino and Dante Dino, Jr. were charged in a three-count indictment with requesting, soliciting, accepting and agreeing to accept bribes and unlawful compensation; and conspiring with each other and others *736 to commit these substantive crimes.[1] A jury found Tresvant guilty on all counts.[2]
The trial court granted Tresvant a new trial on matters relating to jury conduct. The State appealed; we reversed. See State v. Tresvant, 359 So.2d 524 (Fla. 3d DCA 1978) (Tresvant I). Upon remand, the trial court entered judgment against Tresvant and sentenced him to concurrent indeterminate prison terms of six months to four years. Tresvant appealed.
In the interim preceding the filing of Tresvant's appeal, we affirmed the dismissal of the conspiracy count against the co-defendant Giardino on the ground that this count was insufficiently pleaded. See State v. Giardino, 363 So.2d 201 (Fla. 3d DCA 1978). Tresvant, apparently believing that our holding in Giardino would be totally dispositive of Tresvant's appeal, urged that the invalidity of the conspiracy count, ipso facto, entitled him to a complete reversal. He suggested that out-of-court statements of co-conspirators were, in the absence of a viable count charging conspiracy, wrongfully admitted.
For the reasons discussed in Giardino, we agreed that the conspiracy count against Tresvant could not stand. Concluding, sub silentio, that the dismissal of the conspiracy count did not compel reversal of the substantive counts, we deferred ruling on the admissibility of the co-conspirator hearsay pending the filing of the trial transcript.[3]See Tresvant v. State, 370 So.2d 89 (Fla. 3d DCA 1979) (Tresvant II).
There ensued a considerable delay in the preparation and filing of the trial transcript. In the spring of 1980, the transcript was filed and the case was ready for argument on the issue left open. By then, however, counsel who had tried the case on Tresvant's behalf and originated the appeal was suspended from the practice of law.[4] Tresvant ultimately procured new counsel. The case was heard, supplemental briefs were filed, and we now address the undecided question.
The admissibility of hearsay statements of co-conspirators is not dependent upon the existence of a count charging a conspiracy. Damon v. State, 289 So.2d 720 (Fla. 1974); Nichols v. State, 390 So.2d 1238 (Fla. 2d DCA 1980); Boyd v. State, 389 So.2d 642 (Fla. 2d DCA 1980); Farnell v. State, 214 So.2d 753 (Fla. 2d DCA 1968); United States v. Spencer, 415 F.2d 1301 (7th Cir.1969); United States v. Rinaldi, 393 F.2d 97 (2d Cir.1968); United States v. Messina, 388 F.2d 393 (2d Cir.), cert. denied, 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); United States v. Jones, 374 F.2d 414 (2d Cir.1967); United States v. Annunziato, 293 F.2d 373 (2d Cir.1961). See also Briklod v. State, 365 So.2d 1023 (Fla. 1978). The admissibility of these statements depends, instead, on the rule of evidence which excepts such statements from the general rule which makes hearsay inadmissible.[5]Honchell *737 v. State, 257 So.2d 889 (Fla. 1972); Boyd v. State, supra. Thus, whether or not a conspiracy is charged, the threshold condition of admissibility of a co-conspirator's hearsay statement  proof independent of the statement that the defendant against whom the statement is sought to be introduced and the declarant participated together in a conspiracy  remains the same. Damon v. State, supra; Boyd v. State, supra; Briklod v. State, supra; United States v. Annunziato, supra. Tresvant's participation in a conspiracy with Candido Giardino, Dante Dino, Jr. and others, co-conspirators whose declarations were admitted through the testimony of Ronald Flory, Emmett Garmany and Don Kozich, witnesses for the State was, as will be seen, overwhelmingly established by the required independent proof.[6] That made the hearsay, as any other evidence, admissible to prove Tresvant's commission of the substantive crimes.
The record reflects that the City of Opa-Locka awarded a contract for the construction of a public works building to Kozich and Kozich, a construction firm. Tresvant was the mayor of the city and cast his vote in favor of Kozich and Kozich. Dante Dino, Jr. was a principal in D & K Electric Corporation, the electrical subcontractor under Kozich and Kozich on this job. Candido "Candy" Giardino was a commissioner of the City of Opa-Locka. He also voted to award Kozich and Kozich the job. Ronald Flory, Emmett Garmany and Don Kozich were all employees of Kozich and Kozich.
According to Flory,[7] Dino contacted him with a proposition: if Kozich and *738 Kozich would hire Dino's company as the electrical subcontractor, Dino would guarantee that Kozich and Kozich would be awarded the construction job by the city. In return for this guarantee, Dino requested that he be paid more than the $21,000 which Kozich and Kozich had allotted for the electrical work. Dino suggested to Flory that the excess, which would have to be "spread around," could be generated by inflated change orders which Kozich and Kozich would submit and which, Dino made clear, would be approved by the City Commission. Kozich and Kozich agreed to hire Dino's firm for $28,000. Kozich and Kozich was awarded the contract.
We turn now to the evidence, independent of hearsay, which showed Tresvant's participation in a conspiracy with Dino and Giardino (nontestifying declarants) and Flory, Garmany and Kozich (testifying declarants). As will be seen, this evidence consists of testimony about the acts and declarations of Tresvant, as well as testimony about statements incriminating Tresvant made by others in Tresvant's presence. The admissibility of this latter type of evidence is based on the rule that a person's silence can constitute an admission where the circumstances and nature of the statement are such that it would be expected that the person would protest the statement if untrue.[8]See Sullivan v. McMillan, 26 Fla. 243, 8 So. 450 (1890); McCormick, Evidence §§ 269-70 (2d Ed. 1972). Either type of this unquestionably admissible evidence can be used to independently show Tresvant's participation in a conspiracy upon which the admission of the co-conspirator hearsay statements can be predicated[9] and, at the same time, to show Tresvant's commission of the substantive crimes.

Flory's Testimony
Flory testified that he and Don Kozich met with Tresvant and Giardino. Tresvant was present throughout the meeting. There was a general discussion about money and draws. Giardino asked if Dino had been paid his first draw.
"Q What was said then?
"A Mr. Giardino asked if money could be paid directly to them because they had not received any money from Mr. Dante Dino."
* * * * * *
"Q Did he indicate he was by himself in that request?
"A He said is there any way you can pay us direct."
* * * * * *
"Q What was Mr. Kozich's response to that?
"A He said there was no way he could pay direct because he had a contract with D & K Electric for $28,000 and if he paid them direct, he'd also have to pay D & K $28,000 and in effect he would be compounding what he had already done."
Giardino complained about the difficulties he was encountering in "getting ahold" of Dino. There ensued a discussion as to the amount of money intended for the commissioners. Flory told Tresvant and Giardino "that there was $7,000 that was supposed to have been spread around." According to Flory, Tresvant and Giardino were "very surprised that it was a $7,000 figure" and were "both unhappy."
Flory related that he met again with Tresvant at Tresvant's home in Opa-Locka. At that time, Tresvant brought up the question whether there was "any way to get more money out of the padded change orders."
"Q [By the prosecutor] Did Mr. Tresvant ever indicate to you what *739 would happen to the padded change orders should they reach the city commission?
"A They would be passed."
Tresvant asked Flory, "if we get you the change orders, is there more money in it for us?"

Garmany's Testimony
Emmett Garmany also testified to meeting with Tresvant, Flory and Kozich. He heard Don Kozich tell Tresvant:
"... that, you know, we needed to get our monies back through change orders and they discussed that and then Don pressed the issue and told him that, you know, we would in fact, you know, be willing to help you but the thing about it is we have to get before Kennie Wells and Mr. Giardino and we can get it processed through there and we can get it taken care of."
Garmany testified that he told Tresvant:
"... you guys have received your money and everything and we need to get ours."
and Tresvant responded:
"... he would have to meet before the commissioners and everything and then they would put it through once it got to him, Benfield, Tom Benfield would get to it, Mr. Griffiths, and then it would get approved."

Kozich's Testimony
Don Kozich testified to a meeting and conversation with Tresvant, Giardino and Flory.
"Q Who said what? Avoid using `they,' and `we,' and try to name names as to who said what.
"A Well, Mr. Tresvant was doing most of the talking. He said that he was concerned about getting their money.
"Mr. Dino was unavailable and they could not get ahold of him and he was being very uncooperative and he asked me if we could pay them direct."
* * * * * *
"A I told him I couldn't do that without a change order... . and explained that under contract law, I would still be responsible for paying Dino the full amount of his contract."
Kozich then testified:
"Q [By the prosecutor] What else was said during this conversation?
"A I don't know if they asked us or we told them, but I know it came out that Dante Dino had told us they were going to get $1,000 apiece and Mr. Tresvant and Mr. Giardino were under the impression that they were only going to get $500 apiece.
"Q For what, sir?
"A For  Dante Dino was going to pay them $500 apiece.
"Q For what?
"A As part of the arrangement.
"Q For the public works contract?
"A Right.
"Q What were their reactions when you told them that you were of the understanding it was $1,000 apiece.
"A They were upset about that.
"Q Was there an agreement for any other meetings out of this first meeting?"
Kozich related that he told Tresvant and Giardino that he "couldn't do anything on the payment until I talked to Danny [Dino] and I would try and get ahold of Danny [Dino] and set up a meeting where we would get it straightened out." On the following day, the same people met at the job site. Kozich testified that the others "reiterated what we discussed the previous day so far as the money involved and they still wanted me to pay them direct, which I told them I couldn't do... ." He went on:
"Q Were there any other suggestions regarding how they could get their money?
"A Yes.
"Q What was that suggestion?
"A I could get  Dante Dino to sign a change order taking that money out of the contract."
*740 Kozich said he would try to set up a meeting with Dino and get back to them. Tresvant and Giardino indicated they wanted to be present at this meeting, stating, "They weren't sure of him and they wanted to be sure that when in fact I paid him they would get paid."
A meeting at Dino's offices was set up. Kozich testified that at this meeting, in the presence of Tresvant, Giardino and Flory, he gave a $4,400 check payable to D & K Electric to Dino. Kozich testified about a final meeting with Tresvant at Tresvant's home:
"Q Was there ever any more requests for any additional money?
"A Yes.
"Q By whom?
"A Mr. Tresvant.
"Q Where was this?
"A At his home."
* * * * * *
"Q What [did] Mr. Tresvant say to you at this time?
"A He said that he wanted me to put in $1,000 apiece for each one of them and he said, you know, there is four of us.
"Q For what?
"A To guarantee  to ensure the change orders would go through.
"Q Did you agree to that?
"A Yes.
"Q Did you ever pay him any more money?
"A No."
Finally, Kozich testified:
"Q Approximately how many other change orders were submitted?
"A Well, there's one large one which is in a letter form which is not here so that was the one that was the biggest one we discussed which was inflated with the $4,000 figure.
"Q Who did you discuss that with?
"A Tom Benfield and Mr. Tresvant.
"Q Were they aware it was inflated?
"A Yes."
The foregoing testimony of Flory, Garmany and Kozich established[10] that Tresvant was a member of a conspiracy with Giardino, Dino and these witnesses, so as to make admissible hearsay statements of these co-conspirators made during the course of and in furtherance of this conspiracy.
In sum, the admissibility of hearsay statements of co-conspirators is not dependent upon the existence of a count charging conspiracy. Our earlier dismissal of the conspiracy count on the ground that it insufficiently charged the offense of conspiracy is irrelevant to our determination of whether a conspiracy existed in fact. Since a conspiracy and Tresvant's membership in it were established by ample independent proof, the testimony about out-of-court statements made by co-conspirators in furtherance of and during the course of the conspiracy was correctly admitted. Finally, the evidence in this case, including this admissible hearsay testimony, was more than sufficient to support the jury's verdict of Tresvant's guilt on Counts Two and Three for requesting, soliciting or agreeing to accept a bribe and unlawful compensation. See Coleman v. State ex rel. Mitchell, 132 Fla. 845, 182 So. 627 (1938); Craig v. State, *741 244 So.2d 151 (Fla. 3d DCA 1971) (the crime of bribery comprehends attempted bribery); Buchanan v. State, 167 So.2d 38 (Fla. 3d DCA 1964) (a person who solicits a bribe through an agent or go-between, even as a person who acts directly, may be found guilty of violating the bribery statute). Accordingly, we affirm the judgment below.
Affirmed.
BARKDULL, Judge, dissenting.
I respectfully dissent. Before the hearsay testimony was admitted, counsel for the defendant made an objection thereto and the trial judge admitted the hearsay testimony only because of the conspiracy count and made it plain that if it were not for the conspiracy count he would not permit it, and if the conspiracy count failed such evidence would not be admissible as to the counts relating to bribery and unauthorized compensation, as the following appears in the transcript:
... .
"THE COURT:
... .
"However, I am not satisfied that an instruction to the jury to disregard the testimony in the event the State fails to show the existence of a conspiracy and the Defendant's participation therein by other evidence to the extent that it makes a prima facie case is sufficient and if the State does fail to do it, I think it would be incumbent upon me to take an action more drastic than striking the testimony or declaring a mistrial. I think I would be inclined to grant a judgment of acquittal on that count.
"MR. MUNROE: I would agree with you. If I fail to prove the conspiracy, I concede.
... .
"MR. CARHART: The Court is saying that if no conspiracy is proven this testimony would not be admissible as to the bribery and the unauthorized compensation count?
"THE COURT: Right."
It also appears that the hearsay testimony should not have been introduced without independent evidence of the conspiracy. See: Boyd v. State, 389 So.2d 642 (Fla. 2d DCA 1980) wherein, in the opinion by Judge Danahy, the use of hearsay testimony is discussed and, in particular, see the following at page 648:
"3. Conspiracy (however defined) as a basis for admitting in evidence out-of-court (hearsay) statements of a person alleged to be a co-conspirator of the defendant in a criminal case. Such hearsay evidence may be offered in a case in which the crime of conspiracy is charged, in a case in which a substantive offense is charged on a theory of vicarious liability, based on conspiracy, or, theoretically at least, in any other criminal case. As we have pointed out, a co-conspirator's hearsay statements are admissible only if there is independent evidence of the conspiracy... ."
Therefore, from a complete review of the record and, in particular, the trial judge's statements as set forth above plus this court's earlier reversal of the conviction under the conspiracy count, I would accord the defendant a new trial.
NOTES
[1] Violations of §§ 838.015, 838.016 and 777.04(3), Fla. Stat. (1975), respectively.
[2] The cases against Giardino and Dino were severed for reasons not pertinent to this appeal.
[3] Under Tresvant's theory that co-conspirator hearsay is inadmissible without a viable conspiracy count, a review of the trial transcript would be unnecessary to a complete determination of his appeal. Since that theory is erroneous, see discussion infra, a review of the trial transcript is necessary to see if the co-conspirator hearsay was admissible, and if not, to see if the error of admitting it tainted the jury's consideration of the substantive counts (sufficiently proved by other evidence) so as to require a new trial. Since the trial transcript does reveal that the co-conspirator hearsay was pervasive, we would not find its admission harmless if indeed it were inadmissible.
[4] On October 23, 1980, his counsel was disbarred. See The Florida Bar v. Matthews, 389 So.2d 1004 (Fla. 1980).
[5] Tresvant was tried in 1977, prior to the effective date, July 1, 1979, of Section 90.803(18), Florida Statutes (1979). This statute makes admissible, as an admission of a party and an exception to the hearsay rule, "a statement by a person who was a co-conspirator of the party [against whom the statement is offered] during the course, and in furtherance of the conspiracy." Concededly, the Florida Evidence Code applies to criminal proceedings related to crimes committed after its effective date. § 90.103, Fla. Stat. (1979). Section 90.803(18), however, adopted existing Florida law. See Law Revision Council Notes  1976. Florida courts traditionally have viewed a co-conspirator's statement as hearsay, but admissible as an exception to the hearsay rule. This view is now embodied in Section 90.803(18). For a different view, which makes for no difference in result, see Federal Rule of Evidence 801(d)(2)(E), which makes the co-conspirator statement non-hearsay.
[6] As we have previously said, our dismissal of the conspiracy count in Tresvant II for the reason that the count did not sufficiently inform the defendant of the charge against him was not a determination that no conspiracy in fact existed.
[7] This testimony of Flory relating his conversations with Dino outside of the presence of Tresvant is classic hearsay. Hearsay evidence is, inter alia, in-court testimony about a statement made out of court, such statement being offered to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. Favre v. Henderson, 464 F.2d 359 (5th Cir.), cert. denied, 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193 (1972). The admissibility vel non against Tresvant of Dino's statements to Flory depends on whether the State, by proof independent of this and like hearsay, established that Dino and Tresvant participated in this conspiracy during the course of which, and in furtherance of, Dino's statements were made. Flory's out-of-court statements to Dino, although less recognizable as such, are, to the extent they are introduced to prove the truth of Flory's out-of-court statements, equally hearsay, and their admissibility depends as well on independent proof that Flory (as declarant) and Tresvant participated in a conspiracy. The difference between Dino (who did not testify) and Flory (who did) is that Flory's credibility as a witness, and thus as an out-of-court declarant, is subject to scrutiny. Admittedly, a substantial number of these co-conspirator statements were admitted prior to the submission of independent proof showing Tresvant's participation in a conspiracy with the declarant-co-conspirator. That fact, however, is of no consequence, since it is within the sound discretion of the trial judge to permit the order of proof to be reversed provided only that ultimately the prosecution furnishes adequate independent proof of the conspiracy. Honchell v. State, supra; Boyd v. State, supra; see also Briklod v. State, supra. The statement presently found in Section 90.803(18)(e), Florida Statutes (1979), that "upon request of counsel, the court shall instruct the jury that the conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph," admittedly inartfully worded, means that the instruction is to be given at the outset of the case or prior to the admission of hearsay, and does not refer to the order of proof. Moreover, the statement sometimes found that the "conspiracy must first be established," see, e.g. Nichols v. State, supra, cannot, in light of clear Florida law to the contrary, be read to mean that the conspiracy must be proved before the hearsay statements come in. Nichols cites Briklod in support of this statement, but Briklod itself allows the order of proof to be otherwise. The risk in allowing the hearsay to precede the independent proof of the defendant's participation in a conspiracy is that the independent proof may not be forthcoming, and the case will be infected with inadmissible hearsay. But a defendant cannot be heard to complain about the sequence of proof if the conspiracy is ultimately established.
[8] This rule is to be distinguished from the rule prohibiting an admission by silence where the silence is motivated by an advice of constitutional rights.
[9] Even if this evidence were impeached through inconsistencies or otherwise, it is sufficient to overcome a motion for judgment of acquittal, see Everett v. State, 339 So.2d 704 (Fla. 3d DCA 1976), and, a fortiori, sufficient to establish a predicate for the introduction of co-conspirator hearsay statements.
[10] It does not appear that any Florida court has announced a test for the quantum of independent proof of conspiracy which must be found by the trial judge before admitting the co-conspirator statements. See Briklod v. State, supra, at 1026 n. 5. However, every recognized test, i.e.: "slight evidence," Burns v. State, 72 Okla. Cr. 432, 117 P.2d 155 (1941); "prima facie," Carbo v. United States, 314 F.2d 718 (9th Cir.1963), cert. denied sub nom., Palermo v. United States, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964); "preponderance," United States v. Trotter, 529 F.2d 806 (3d Cir.1976); "fair preponderance," United States v. Ross, 321 F.2d 61 (2d Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963); and "substantial," United States v. James, 590 F.2d 575 (5th Cir.1979) (rehearing en banc); United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), n. 14 (dictum), would have been satisfied by the proof of Tresvant's independent acts and statements in the present case.