587 So.2d 543 (1991)
Rickie E. WILDER, Appellant,
v.
STATE of Florida, Appellee.
Nos. 89-205 and 89-593.
District Court of Appeal of Florida, First District.
September 30, 1991.
*544 Michael E. Allen, Public Defender, Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
In appellate Case No. 89-593, appellant appeals a judgment of conviction and sentence for grand theft, and multiple judgments and convictions for the offense of trafficking in stolen property, and solicitation to commit the offense of dealing in stolen property. We affirm the judgments of conviction in each case on the merits, but reverse the sentences departing from the sentencing guidelines, and remand for resentencing. We find appellant's pro se appeal in appellate Case No. 89-205 to be without merit and affirm without discussion.
All charges against appellant for grand theft, trafficking in stolen property, and solicitation to commit the offense of dealing in stolen property were consolidated for trial on motion by appellant. Appellant seeks reversal on the contentions: (1) that the trial court erred in denying his pretrial motion for substitution of counsel without making proper inquiry; (2) that the court erred in admitting into evidence hearsay statements by an alleged co-conspirator without proof of the existence of a conspiracy; (3) that the court erred in denying appellant's motions for judgment of acquittal on the ground that the state failed to prove that the property sold by appellant to an undercover officer was stolen; (4) that the court erred in allowing a state's witness to testify who had not been listed on the state's discovery response, without conducting an adequate Richardson inquiry; (5) that the court erred in departing from the sentencing guidelines because all reasons stated were improper and were not reduced to writing at the time of sentencing.
We address first the alleged error in the trial court's denial of appellant's pre-trial motion for substitution of counsel. The transcript of proceedings before the trial court discloses that appellant's motion was grounded upon a general allegation of ineffectiveness of his court-appointed attorney. At the hearing, the trial court observed that counsel had been effectively assisting appellant thus far, so far as the court was concerned. Appellant's only response was that he "has failed to do anything." The court then stated: "General allegations like that do not hold water with *545 me. I want some specific allegations. In your motion you have failed to set forth specific allegations warranting any change of counsel." The court then advised that the motion was being denied.
As stated in Kott v. State, 518 So.2d 957, 958 (Fla. 1st DCA 1988), "where a defendant voices a seemingly substantial complaint about counsel, the court should make a thorough inquiry concerning the reasons for a defendant's dissatisfaction...," (citations omitted; emphasis added). It appears clear to us from the foregoing that the trial court found no reasonable basis for appellant's charge of ineffective assistance of counsel, and therefore, the court properly denied the motion. See, Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988); Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). We note further that the trial court properly inquired as to appellant's ability to hire his own attorney, and it advised appellant concerning his right to represent himself. Appellant was unable to employ his own attorney, and made no request for self representation. We find no error on this point.
Appellant next contends that the trial court erred in allowing the state to introduce the hearsay statements of alleged co-conspirators as an exception to the hearsay rule, because the trial court considered the alleged co-conspirator's statements when determining whether a conspiracy existed. Appellant argues, and we agree, that although that practice is permissible under federal law, Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court of Florida expressly rejected the Bourjaily approach in Romani v. State, 542 So.2d 984 (Fla. 1989). Appellant urges, accordingly, that the trial court's ruling admitting the hearsay statements, when the proof of the existence of the conspiracy was based in part on the statements themselves, was contrary to the Florida Supreme Court's ruling in Romani.
We first note that the prosecuting attorney did rely upon the Bourjaily rule in urging the court to overrule appellant's objection to Officer Scholz's testimony concerning the hearsay statements of Michael Bell. Indications are that the trial court accepted the state's position, neither the court nor counsel having the benefit of this court's subsequent decision in State v. Edwards, 536 So.2d 288 (Fla. 1st DCA 1988), or the supreme court's later decision in Romani v. State, 542 So.2d 984 (Fla. 1989), rejecting the Bourjaily rule. In at least eight of the cases, Officer Scholz was permitted to relate statements made by Bell to the effect that the property sold to Scholz by Wilder was stolen by Wilder, by Bell, by both, or by other persons. At the time the first incriminating hearsay statement of Bell was admitted into evidence, the state had not yet introduced sufficient evidence to establish the existence of a conspiracy between Wilder, Bell, or others.
Notwithstanding appellant's argument that the trial court erred in accepting the Bourjaily rule in allowing Bell's hearsay statements to be introduced when first offered, we conclude that reversible error has not been demonstrated. While there was insufficient proof of a conspiracy when Bell's hearsay testimony was first admitted, the state did produce thereafter substantial, unrefuted evidence that appellant committed a series of similar offenses so as to prove the existence of a conspiracy. Therefore, any error in the admission of Bell's testimony was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); see also Romani, 542 So.2d at 986. We thus fail to find reversible error on this point.
The series of cases tried below arose as a result of a sting operation initiated by law enforcement officers in order to break up a suspected theft and dealing in stolen property ring operating from the house from which appellant Wilder's unlawful activities were carried on. Investigator Scholz testified that in February 1988, operating as an undercover officer, he held himself out to be a buyer of stolen property. He stated that Michael Bell knew that Scholz had been buying stolen property, that Bell had sold Scholz some property, and that it was through Bell that Scholz met appellant.
Between February 10, 1988 and March 17, 1988  a span of 35 days  Deputy Sheriff *546 Scholz was contacted by telephone, made arrangements to meet with Wilder, and subsequently purchased property from Wilder on 18 different occasions. These transactions included more than 50 items (one "item" was a stack of 12 hollow-core doors, and another "item" consisted of multiple tools), ranging from a $150 gas grill purchased by Scholz for $20, to a $10,000 tractor purchased by Scholz from Wilder for $450. Scholz paid Wilder a total of $3,920 during the 18 transactions for property worth, in the aggregate, some $35,000 to $40,000, not including the value of items purchased on four different occasions for which there was no testimony as to market value.
During five of these sales transactions, Wilder told Scholz that the property had been stolen. On three other occasions, Wilder made incriminating statements, either directly or by implication, indicating knowledge of the contraband character of the goods. On one of these occasions, Wilder told Scholz, in the presence of Bell and another co-conspirator, Buffkin, that he had been followed on the way to the selected sale site, but that "they" had eluded their pursuers. On another occasion, Wilder (along with Bell) pointed out the house from which the stolen property had been taken in a burglary. On yet another occasion, Wilder told Scholz that he "nearly broke his back" when he unbolted a winch from the trailer from which the owner said it had been stolen. In all but one case, the owners of the merchandise purchased by Scholz from Wilder testified that the property had been stolen just prior to the time of the sales, and in at least one case, just the night before. In a case charging theft, it was established that Wilder was apprehended in the act of stealing an allterrain vehicle from the parking lot of an apartment complex. None of this evidence was contradicted, since Wilder did not testify and called no witnesses.
There was substantial evidence linking Bell to Wilder's criminal activities. As previously indicated, Bell knew that Scholz was interested in buying stolen property, and through Bell, Scholz met Wilder. Further, Bell was present with Wilder on at least ten of the occasions when stolen property was sold to Scholz, and Scholz frequently used the pronoun "they" in describing the parties with whom he conducted the transactions. Bell also actively assisted in loading and unloading property on occasion.
While presence at the scene of a crime is not sufficient to establish a conspiracy, presence is a factor that may be considered in determining whether a conspiracy existed. Horner v. State, 558 So.2d 138 (Fla. 3d DCA 1990); Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988). But, evidence of aiding and abetting is insufficient to prove a conspiracy. Jimenez v. State, 535 So.2d 343 (Fla. 2d DCA 1988); Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987); Brown v. State, 468 So.2d 325 (Fla. 2d DCA), rev. denied, 476 So.2d 672 (Fla. 1985). On the other hand, circumstantial evidence alone will support the existence of a conspiracy. Edwards v. State, 516 So.2d 285 (Fla. 2d DCA 1987); Munroe v. State, 514 So.2d 397 (Fla. 1st DCA 1987), rev. denied, 519 So.2d 987 (Fla. 1988); see also Gonzalez v. State, 455 So.2d 1131 (Fla.2d DCA 1984) (both agreement and intention to conspire can be proved by circumstantial evidence); Perez v. State, 561 So.2d 1265 (Fla.3d DCA), rev. denied, 576 So.2d 289 (Fla. 1990) (conspiratorial agreement can be inferred from circumstantial evidence indicative of an overall plan). Finally, as this court stated in Jenkins v. State, 444 So.2d 1108, 1109 (Fla. 1st DCA 1984), evidence of prior, similar conduct is admissible to prove the existence, formation or organization of a conspiracy.[1]
On this record, viewed in the light most favorable to the state, the evidence of Bell's participation in a conspiracy with Wilder to traffick in stolen goods, if not overwhelming, is abundantly sufficient to show the existence of a conspiracy by a *547 preponderance of the evidence without consideration of any hearsay statements made by Bell. As the above recitation of the evidence demonstrates, the cumulative effect of all the evidence presented at trial leaves little room for doubt that there was an intent and agreement between Bell and appellant to traffick in stolen property. The dealings between Scholz and appellant followed a consistent pattern  a telephone call to arrange for a meeting, most often during the nighttime hours, usually at one of two locations selected by Wilder. Bell's involvement, in one way or another, in a closely-spaced series of similar criminal transactions leads to the conclusion that his participation and presence with appellant was by prearrangement and amounted to more than simply aiding and abetting. See, Pino v. State, 573 So.2d 151 (Fla.3d DCA 1991).
As for the fact that Bell's hearsay statements were admitted initially before the evidence sufficiently established a conspiracy, we are of the view that while prudence may dictate the practice of requiring independent proof of a conspiracy prior to introduction of a co-conspirator's statement under the hearsay exception, there is no rigid requirement that this order of proof be followed. See, Briklod v. State, 365 So.2d 1023 (Fla. 1978); Garcia v. State, 492 So.2d 819 (Fla. 2d DCA 1986); Tresvant v. State, 396 So.2d 733 (Fla. 3d DCA 1981). As noted, even if admission of Bell's hearsay statements prior to proof of a conspiracy was error, we find that such error was harmless in view of the overwhelming evidence of appellant's guilt even without consideration of any hearsay statements by an alleged co-conspirator.
Turning to the third issue, appellant urges that the court should have granted a judgment of acquittal as to four of the cases on the ground that the state failed to prove that the property sold to the undercover officer was stolen. Specifically, appellant refers to Case No. 88-1369 (winch stolen from Harold Quarrels); Case No. 88-1378 (Blazer bass boat stolen from Steve Joyner); Case No. 88-1401 (John Deere tractor stolen from James Martin); and Case No. 88-1402 (compressor and other items stolen from Catches Auto Company). Appellant argues that the motions should have been granted as to these cases because the state failed to present sufficient direct or circumstantial evidence to connect the property stolen with the property bought. It would have been a simple matter, appellant argues, for the prosecution to have asked Scholz and the owners to identify photographs of the property introduced into evidence, but this was not done.
We agree that the prosecution seemed to pay little attention, in some cases, to the necessity of identifying the property purchased by Scholz as being the specific property stolen from the various owners who testified. However, in each case there was either direct evidence of similar items being stolen shortly prior to its purchase by Scholz, and returned to the owner by the sheriff's department, or there were other circumstances sufficient for a jury to base a finding that the property sold by appellant was stolen. In each case, the purchase price was far below value, and each sale fit into the same on-going scheme or enterprise as the other sales in which the property was specifically identified as stolen. As already noted, on five occasions appellant told Scholz the property was stolen. In addition, photographs of each item of property purchased were admitted into evidence, and Scholz was permitted to testify that each of his case files contained a property receipt. Direct testimony was elicited from the owner in Case No. 88-1378 that the property had been returned to him by the sheriff's department, and from the owner in Case No. 88-1401 that after getting the description and serial numbers from the sheriff's department his insurance company paid him on his stolen property claim. While we agree that the evidence in the four cases singled out by appellant did not link the property with the respective owners with the precision ordinarily required in cases of this nature when tried separately, we cannot say that the evidence, considered as a whole, was insufficient to afford a basis for a jury verdict of guilt in each case. Accordingly, we find that the trial judge did not err in denial of *548 appellant's motions for judgment of acquittal.
We likewise find that the trial judge did not commit reversible error under Richardson v. State, 246 So.2d 771 (Fla. 1971), by allowing a witness who had not been listed on the state's discovery answer to testify. Appellant bases his argument on this point upon the assumption that the trial court failed to conduct a Richardson hearing. We disagree.
The facts surrounding the alleged Richardson violation are as follows. In Case No. 88-1363, appellant was charged with trafficking in stolen property, specifically, a tractor belonging to Harold Quarrels. A witness testified for the state that the tractor, belonging to Quarrels, was located inside a chain-link fence enclosure, on premises where Quarrels was working as a contractor on a building under construction. The tractor was inside the enclosure at the close of business on February 28, 1988, and was missing on the morning of February 29. Scholz testified that he bought a Ford tractor from Wilder on the evening of February 28 at approximately 11:00 P.M. Subsequently, the state called another witness, Dwayne Williams, to identify the tractor in possession of the sheriff's department as the one sold to the owner, Harold Quarrels. Appellant objected because the state had not listed Dwayne Williams as a witness in its discovery response, and he argued to the court that there was a Richardson violation. Upon being questioned by the court as to the substance of the witness's testimony, the state attorney informed the court that the witness would testify as to the identity and ownership of the tractor in possession of the sheriff's department. The court then stated: "I'll permit the witness to testify." Appellant's counsel then made a further objection to the testimony on grounds of hearsay and requested a Richardson hearing. Following a discussion between the prosecuting attorney and appellant's counsel as to whether there was a discovery demand, the following exchange between court and counsel took place:
THE COURT: Even if you did demand discovery, the testimony this witness is going to give is not going to implicate your client insofar as guilt or innocence is concerned. All he is doing is identifying a piece of equipment stolen by somebody.
MR. FRANCE: He's using this to establish the ownership of the equipment which is an essential element they have to prove in this case, Your Honor. In that sense it is highly prejudicial to have the witness present.
THE COURT: I'll give you the opportunity to talk to this witness right now if you wish. Otherwise, if you do not wish, I'm going to permit the state to call him as a witness.
MR. FRANCE: Go ahead and call him.
Appellant urges that the above colloquy does not satisfy the requirements of a Richardson inquiry. The state urges that the trial court's inquiry was sufficient. We agree.
In calling the witness, the state attorney had already informed the court that the witness Dwayne Williams had been found just the night before and that the state did not know about his existence until the day before, when Williams' boss informed the state attorney that Williams would be able to identify the tractor. Thus, the circumstances of the violation, if any, were clearly revealed to the court. Further, as noted by the trial judge, the only issue was identification of the property, as to which there was no dispute in the evidence. Although sparse in this regard, the record indicates that the trial judge thought the violation to be insubstantial and nonprejudicial to appellant. In any event, the trial judge extended to trial counsel the opportunity to talk to the witness before his testimony, and this offer was declined by counsel. The witness then testified that he had examined the tractor in possession of the sheriff's department, at which time the owner, Harold Quarrels, was present, and that the tractor was the same tractor that he had sold to Harold Quarrels. From the foregoing, it appears that the trial court was sufficiently apprised of the facts and circumstances surrounding the violation *549 and its possible consequences to appellant, and that the trial court offered a suitable remedy. Therefore, we find no reversible error on this issue. See, State v. Hall, 509 So.2d 1093 (Fla. 1987); Stone v. State, 547 So.2d 657 (Fla.2d DCA 1989).
Finally, we reverse the departure sentence imposed and remand for resentencing in the guidelines range. Appellant's argument that the trial court erred in not providing written reasons contemporaneously with sentencing under the decision in Ree v. State, 565 So.2d 1329 (Fla. 1990), is not applicable in the instant case as appellant was sentenced January 18, 1989. As explained in State v. Lyles, 576 So.2d 706 (Fla. 1991), Ree applies prospectively to sentences imposed after the filing of the final opinion in Ree, that is, after July 19, 1990. However, we agree with appellant that the stated grounds are not an adequate basis for departure in this case.
In its written order, the trial court observed that appellant had an "extensive" juvenile record and a "serious and lengthy" record of prior adult convictions. The trial court added that the adult record warranted treatment as an habitual offender. The court also noted that appellant was on probation for the offense of aggravated robbery, committed in Texas, when the instant offenses were committed. The trial court noted further that it appeared that the instant offenses were committed while appellant was on probation imposed by the Circuit Court of Escambia County. Given the above facts, the trial court concluded that appellant had been involved in an escalating pattern of criminal activity.
The presentence report contained in the record lists only three juvenile offenses which are the equivalent of convictions; two of the offenses were committed at the same time. As such, appellant's juvenile record is not extensive or serious enough to warrant departure. See Puffinberger v. State, 581 So.2d 897 (Fla. 1991). Further, appellant's adult record, while lengthy, consists primarily of property offenses similar to the kind for which appellant was charged in this case. Appellant's prior record was scored. While a pattern of escalating criminal activity can be a permissible basis for departure even though there has been no progression to violent crimes against persons, Williams v. State, 581 So.2d 144 (Fla. 1991), the record in this case fails to show a pattern of increasingly serious criminal activity. Furthermore, since appellant was assessed points under legal status for his probationary status at the time of offense, departure cannot be affirmed on this ground. Lambert v. State, 545 So.2d 838 (Fla. 1989).
Accordingly, the judgments of conviction are AFFIRMED, but the departure sentence is REVERSED and the cases are REMANDED for resentencing within the guidelines range.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] In order for the hearsay testimony of one member of a conspiracy to be used against another, the existence of the conspiracy must be proved by a preponderance of the evidence. Romani v. State, 542 So.2d at 985 n. 3.