940 So.2d 543 (2006)
Catoga YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-2928.
District Court of Appeal of Florida, Fifth District.
October 27, 2006.
*544 James Sweeting, III, of James Sweeting, III, P.A., Winter Garden, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellee.
LAWSON, J.
Catoga Young appeals from his conviction of conspiracy to traffic in more than 400 grams of cocaine, raising two issues. First, he argues that the evidence was insufficient to support the conviction. Second, he argues that the trial court abused its discretion by denying a pre-trial motion to continue. We disagree, and affirm.
With respect to the first issue, "the crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of this crime." Ramirez v. State, 371 So.2d 1063, 1065 (Fla. 3d DCA 1979) (citing King v. State, 104 So.2d 730 (Fla. 1958)). A conspiracy may be proven with circumstantial evidence, Wilder v. State, 587 So.2d 543, 546 (Fla. 1st DCA 1991), and proof of a formal agreement is not necessary. Borders v. State, 312 So.2d 247 (Fla. 3d DCA 1975). However, evidence that the defendant was merely present at the scene of the crime, had knowledge of the crime, or even aided others in the commission of the crime, is insufficient to support a conspiracy conviction. Jimenez v. State, 535 So.2d 343 (Fla. 2d DCA 1988). Rather, the state's evidence must show that the defendant entered into an agreement with another to commit the crime, and intended to commit the crime. Id.; Ramirez, 371 So.2d at 1065.
In the instant case, the State's evidence showed that Young and his father both discussed and arranged the drug transaction, by telephone, with undercover agents. The call started with Young's father on the line, and he agreed to a price. The father then passed the phone to Young, who discussed the quality of the drugs desired. Young explained that: "I cook my shit, you know what I'm saying?" At trial, the agents testified that this meant Young intended to convert the powder cocaine into crack. Because the process involves "cutting in" another substance (such as baking powder), the cocaine needed to be pure. The agent explained to Young that the cocaine was pure, and assured that: "If you guys ain't happy with it, you say, yo, this isn't gonna work, you know, and we can part ways. You take your money. I take my stuff." The agent then asked Young to confirm that he had the $10,500 that his father had represented. Young confirmed that he did,[1] and the parties agreed to meet.
At the pre-arranged meeting, it was Young who initially showed the cash to the agents. Young also went to the agents' car to inspect the cocaine. The agents weighed the drugs out for Young, who then "reached in, smelled it, and broke a piece off to verify its purity, its content." Young then "smelled it again, brought it up to his nose," and told the agents that he was pleased with the quality. Young and the agents again talked about the purity of the cocaine, with the agents assuring Young that it could be "cooked." Young then announced that he was "straight," which the officers explained as street slang indicating that the transaction was "on." Young then exited the agents' undercover car, and went back to his car to confer *545 with his father. After conferring with Young, the father then entered the agents' car and concluded the transaction. Immediately after the transaction was complete, a "take-down" crew was signaled, and Young and his father were arrested. They were placed in the back of a patrol car together, and their conversation was secretly taped. While in the patrol car, Young asked his father to say that the deal was all his, but exclaimed that "they" had been set up.
Clearly, this evidence shows more than mere presence at the scene, or knowledge of the crime. It also shows more than mere aiding and abetting. Young was involved in every aspect of the transaction with his father. He helped arrange the transaction. He had control of the money. He approved the quality of the drugs. And, he very clearly communicated that he "cooked" his cocaine so that he could sell it as crack. His admission that "they" had both been set up also directly evidences the agreement between Young and his father to jointly commit the crime for which both had just been arrested. Given all of these facts, we find that the evidence was sufficient to support a conspiracy conviction. See Pino v. State, 573 So.2d 151, 152 (Fla. 3d DCA 1991) ("Where, as here, the defendants are involved in a series of meetings, arrangements, and negotiations to sell or buy illegal drugs from an undercover police officer which eventually leads to such a sale or purchase, Florida courts have generally sustained convictions for conspiracy to commit the offense of drug trafficking based on this conduct.") (citations omitted).
With respect to the second issue, the record does evidence that the defense made a motion to continue at some point prior to trial. However, the motion was not in writing and Young has not provided a transcript of the hearing at which the oral motion was made and denied. The record before us simply reflects that at trial Young's counsel mentioned that he had asked for a continuance. However, counsel did not renew the motion and simply announced that he was ready for trial. Therefore, Young has failed to sustain his burden of establishing any error with respect to the trial court's denial of his motion to continue. See Pedroni v. Pedroni, 788 So.2d 1138 (Fla. 5th DCA 2001) (explaining that a trial court's ruling is "clothed with a presumption of correctness" which an appellant must overcome by providing the appellate court with a record sufficient to demonstrate the alleged error and support a claim for reversal).
AFFIRMED.
PLEUS, C.J., and EVANDER, J., concur.
NOTES
[1] The following exchange took place: "AGENT: You got the ten-five he says? YOUNG: Right. AGENT: You got the green? YOUNG: Yeah."