DAMOORGIAN, J.
 

 Appellant, Lincoln Jackson, timely appeals his judgment and sentence for conspiracy to traffic in oxycodone. Jackson was charged by amended information with trafficking in oxycodone, conspiracy to traffic in oxycodone, and possession of marijuana less than twenty grams. A jury found him not guilty of trafficking in oxy-codone, but guilty of conspiracy to traffic in oxycodone and possession of marijuana less than twenty grams. On appeal, Jackson argues that there was no evidence of his participation in any prior activity regarding the drug transaction sufficient to establish an agreement to traffic in oxyco-done. We agree and reverse his conviction and sentence for conspiracy to traffic in oxycodone. Finding this issue disposi-tive, we do not address his second point on appeal regarding the trial court’s denial of his motion to arrest judgment. As Jackson raises no issue on appeal with his conviction and sentence for possession of marijuana, we affirm that conviction and sentence without discussion.
 

 At trial, the following evidence was adduced. In September of 2009, the police engaged in an undercover drug operation to purchase fifty oxycodone pills. Through a series of events, which are not relevant to our decision and did not involve Jackson, the police were led to the parking lot of an apartment building where the drugs were to be delivered to a courier in exchange for money provided by an undercover officer. The courier was then to return to a predetermined location and transfer the drugs to the undercover officer. The courier entered the parking lot, which was under surveillance by two police officers positioned in the northern section of the lot. The officers observed a Chevrolet back into a parking space at the southern end of the lot. Next, they observed co-defendant Junior Julien, the driver of the Chevrolet, exit the vehicle and meet with the courier behind a wall at the corner of the apartment building. The wall surrounded the apartment building. At that point the drugs were delivered in exchange for payment. The transaction between the courier and Julien took less than one minute.
 

 While Julien was meeting with the courier to complete the delivery, one of the surveilling officers observed Jackson exit the same Chevrolet. After exiting the vehicle, Jackson repeatedly looked up and down the street.
 

 The other surveilling officer observed Julien exit the driver’s seat of the vehicle and walk with the courier towards the apartment building. He also observed Jackson exit the vehicle, walk towards the back of the vehicle and while facing east,
 
 *565
 
 begin constantly looking around the area. The drug transaction occurred on the west side of the parking lot. After observing Jackson for close to a minute, Jackson stopped looking around when Julien started walking back towards the car, at which point both got back into the vehicle at the same time. Neither officer observed any communication between Jackson and Ju-lien.
 

 A third officer positioned across the street in another parking lot observed Jackson walk to the rear of the vehicle and stand by the wall looking up and down the street. This officer testified, “I think he went to urinate, but then he kept looking up and down the street, was ... focusing his attention up and down the street....” He also testified that there was “no doubt in my mind, he was looking out.”
 

 After the transaction Julien drove the Chevrolet several blocks to a driveway, got out of the vehicle and entered a Ford Explorer. At this point, a third occupant of the Chevrolet, co-defendant Betsy Dieu-juste, emerged and moved to the driver’s seat of the Chevrolet, and she and Jackson drove away. Dieujuste and Jackson were stopped shortly thereafter and arrested. Jackson was searched, but no investigatory money was found in his possession. The police found four-hundred dollars in Dieujuste’s purse, which matched the investigatory funds provided by the undercover officer to the courier to buy the pills from Julien. When the police arrested Julien, they found one-hundred and fifty dollars in his possession, which also matched the investigatory funds used in the transaction at issue.
 

 The courier told the police she bought the pills from Julien, but did not give the police any information that Jackson was involved. The plan was for Julien to deliver the pills to her at her apartment building after the undercover officer arrived with the money for the pills. The courier testified that she had no communication with Jackson and there was no agreement with him to get pills. During police questioning, Jackson stated that his friend Dieujuste came by to pick him up, that he did not know Julien, and he had exited the vehicle to urinate.
 

 Relevant to this appeal, Jackson moved for judgment of acquittal on the conspiracy charge, and the trial court denied the motion. After the jury found Jackson guilty of conspiracy to traffic in oxycodone, he made a motion for arrest of judgment and/or new trial, arguing there was insufficient evidence to sustain a conviction for conspiracy to traffic in oxycodone. The trial court also denied this motion.
 

 “A de novo standard of review applies in reviewing a motion for judgment of acquittal.”
 
 Richards v. State,
 
 37 So.3d 925, 926 (Fla. 4th DCA 2010) (citing
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002)). In moving for a judgment of acquittal, a defendant admits not only the facts in evidence, but also every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence.
 
 Id.
 
 at 926 (citation omitted). “A court should grant a motion for judgment of acquittal only if ‘the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.’ ”
 
 Id.
 
 at 926 (quoting
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla.1974)).
 

 Jackson argues that the evidence presented by the State of his behavior in the parking lot is insufficient to establish an implied agreement to traffic in oxycodone.
 

 “A conspiracy exists where there is an express or implied agreement between two or more persons to commit a criminal offense, and an intention to commit the offense.”
 
 Schlicher v. State,
 
 13 So.3d 515,
 
 *566
 
 517 (Fla. 4th DCA 2009) (citing
 
 Leigh v. State,
 
 967 So.2d 1102, 1104 (Fla. 4th DCA 2007) and
 
 Pino v. State,
 
 573 So.2d 151, 152 (Fla. 3d DCA 1991)). Direct proof of an agreement is not necessary as an agreement may be inferred from the surrounding circumstances.
 
 Id.
 
 (citations omitted). The district courts have generally sustained convictions for conspiracies to buy or sell drugs where the “defendants are involved in a series of meetings, arrangements and negotiations to sell or buy illegal drugs that lead to such sale or purchase.”
 
 Id.
 
 (citations omitted). However, when the evidence establishes “that the defendant was merely present at the scene of the crime, had knowledge of the crime, or even aided others in the commission of the crime,” it is inadequate, without more, to sustain a conspiracy conviction.
 
 Young v. State,
 
 940 So.2d 543, 544 (Fla. 5th DCA 2006);
 
 see also Honchell v. State,
 
 257 So.2d 889 (Fla.1971);
 
 Voto v. State,
 
 509 So.2d 1291 (Fla. 4th DCA 1987).
 

 In
 
 Pino,
 
 the Third District noted:
 

 Only where ... the defendant’s involvement in the enterprise appears to be minimal at best, evincing no prearrange-ments with the other defendants,
 
 see Pennington v. State,
 
 526 So.2d 87 (Fla. 4th DCA 1987),
 
 approved,
 
 534 So.2d 393 (Fla.1988);
 
 Voto v. State,
 
 509 So.2d 1291 (Fla. 4th DCA 1987), or where, ... the defendant has been acquitted of an accompanying drug trafficking charge, thereby discrediting much, if not all of the evidence against the defendant,
 
 see, e.g., Jimenez v. State,
 
 535 So.2d 343 (Fla. 2d DCA 1988);
 
 Ashenoff v. State,
 
 391 So.2d 289 (Fla. 3d DCA 1980), have Florida courts been inclined to reverse such conspiracy convictions. Indeed, the typical drug trafficking transaction involving a series of clandestine meetings between several defendants and an undercover police officer which eventually leads to a sale or purchase of illegal drugs, as here, presents the classic example of a criminal conspiracy; by definition, such a scenario inferentially establishes, as a general rule, a prior agreement among the defendants to effect a sale or purchase of illegal drugs, else such a sale or purchase with its complicated arrangements would never have taken place.
 

 Pino,
 
 573 So.2d at 152.
 

 This case is strikingly similar to the events described in
 
 Voto
 
 where we held that “although there was substantial proof of participation in the crime [of trafficking in cocaine as an aider and abettor], there was insufficient evidence of participation in any underlying understanding or agreement.”
 
 Voto,
 
 509 So.2d at 1293 (citations omitted). In
 
 Voto,
 
 we concluded that the trial court erred in denying defendant’s motion for judgment of acquittal as to the conspiracy charge.
 
 Id.
 

 Such is the case here. The State proved that Jackson arrived to a location where a pre-arranged drug deal was to take place. After arriving he acted in a manner consistent with a look-out. Jackson left the location at the same time as Julien after the deal had taken place. As Jackson points out, the State offered no evidence of a prior agreement in support of the charge of conspiracy. At trial, all that was proven was that Jackson was present when the transaction occurred and may have acted as a lookout, which is insufficient to establish any implied agreement to traffic in oxycodone. For example, there was no evidence of telephone conversations or meetings between Jackson and the courier concerning a drug deal or evidence of any plan between Jackson and Dieujuste or Jackson and Julien. In addition, the officers did not observe any conversation between Jackson and Julien on the date of the transaction. Finally,
 
 *567
 
 Jackson was acquitted of the accompanying drug trafficking charge. Thus, although there may be proof of participation, there was no proof evidencing an understanding or agreement.
 
 See Voto,
 
 509 So.2d at 1293. Accordingly, we reverse his conviction and sentence for conspiracy to traffic in oxycodone and remand for entry of a judgment of acquittal on that count.
 

 Reversed and Remanded.
 

 WARNER and GERBER, JJ., concur.