536 So.2d 288 (1988)
STATE of Florida, Appellant,
v.
Dewey Patrick EDWARDS and Paul Robert Hernandez, Appellees.
No. 88-522.
District Court of Appeal of Florida, First District.
December 12, 1988.
*289 Robert A. Butterworth, Atty. Gen., Helen P. Nelson, Asst. Atty. Gen., for appellant.
Michael E. Allen, Public Defender, Maria Ines Suber, Asst. Public Defender, for appellees.
NIMMONS, Judge.
The appellees/defendants were charged in a two-count information with conspiracy to traffic in cocaine and with trafficking in cocaine. The state appeals from a nonfinal order suppressing each defendant's hearsay statements implicating the codefendant as a coconspirator, the court finding inapplicable the "coconspirator rule" codified in *290 the Florida Evidence Code, Section 90.803, Florida Statutes.[1]
Prior to trial, both appellees filed a "Motion to Suppress Hearsay Statements of Alleged Coconspirators," claiming that the state failed to produce substantial independent evidence that a conspiracy existed and that the appellees participated in it. A hearing was conducted on the motion, at which the state presented the testimony of Detective Ben Moore, a narcotics detective with the Jacksonville Sheriff's Office.
Detective Moore established through his testimony that on October 24, 1987 he and his partner were approached by an informant who told them that he had a friend interested in selling several ounces of cocaine. The detectives were then introduced to the friend, appellee Edwards, on October 27. They told Edwards that they wanted to buy six or seven ounces of cocaine. Edwards told them he could only sell them two ounces at that time because he had outstanding commitments on the remaining quantity which he had under his control. The detectives broke off the discussion at that point.
The detectives met with Edwards again on November 3 to discuss the purchase of a pound of cocaine. According to Detective Moore, Edwards told the detectives that his "source" had just been arrested in Greenville, South Carolina, that the source was still in jail, and that he was trying to "get them out and ... once his source got out of jail he would get us anything we wanted." Edwards gave the detectives his address and told them to come by on November 5 to check on the status of things.
The detectives went to Edwards' home on November 5. At that time, Edwards told them his source had agreed to sell an ounce of cocaine for $12,000. Edwards gave one of the detectives a small sample of cocaine for testing.
The detectives asked Edwards if he could come down on the price and Edwards said he did not know and would have to call his source. He did not have a phone at his house so the detectives drove him to a convenience store to use a pay phone. On the way Edwards asked them if they knew anybody who wanted to buy a kilo of cocaine for $32,000. They told him, "Sure." When they arrived at the convenience store, Edwards went to the pay phone to call his source. At the conclusion of his telephone conversation, Edwards told the detectives that his source had just gotten "busted" in South Carolina and did not want to talk on the telephone. Edwards said the source would meet them at a certain Taco Bell restaurant in Jacksonville.
At approximately 7:30 p.m. that evening, appellee Hernandez arrived at the Taco Bell. Hernandez got into Edwards' pickup truck on the passenger side and was introduced to the detectives. Edwards sat on the driver's side. Hernandez told the detectives to talk in terms of "meat." Hernandez stated that he had seven "steaks" (ounces) worth several thousand dollars. The detectives said they could pay $1500 per steak. The detectives then asked about a kilo. Hernandez told them that a "roast" (kilo) was $32,000. After some "dickering," Hernandez said he would sell a roast to them for $28,000. The detectives said that they were interested in both the steaks and a roast. Hernandez said he could have the roast there by ten o'clock Saturday night.
At that time the detectives left, telling Edwards and Hernandez they had to go use a telephone. They called their supervisor to secure the money for the kilo and seven ounces of cocaine and were gone approximately 20 minutes. When they returned to the Taco Bell, Hernandez had departed. They caught up with Edwards who told them that if they were still interested in buying seven ounces of cocaine to let him know and to be back at Taco Bell that evening at approximately 10:30 p.m.
Later that evening, the detectives went to Taco Bell and met with Edwards. Hernandez *291 was not with him. He told the detectives that Hernandez got nervous because they had taken so long on the phone and that if they were still interested in buying an ounce of cocaine, they should meet with him and Hernandez the next day for lunch. Edwards said that they would, at that time, sell the detectives two steaks. An hour later, they would sell another two steaks. They would sell them the balance of the cocaine an hour later.
The following day the detectives met Edwards at a shopping center. They told him they were still interested in the buy and he said "fine." Edwards said that his source wanted to close the deal by initially selling them two ounces. Then a half hour later, two ounces more would be sold, and so on until all seven ounces were sold. The detectives told Edwards they did not want to do that, but that they wanted to buy four ounces initially, and a half hour later buy the other three ounces. Edwards agreed to that. Edwards told them that he and his source would meet them at the shopping center at approximately 5:00 p.m. to "do the deal."
The detectives went to the shopping center at five o'clock but Hernandez and Edwards never showed up. Later that evening, Detective Moore called Edwards who told him the deal was still on, that he had just received the "red meat," that he did not want to talk on the telephone, and that he would talk to them on Monday (this was a Friday).
The detectives went to Edwards' house on Monday morning. Edwards was not there so they went to the meat shop where Edwards and Hernandez worked and found Hernandez. The detectives asked Hernandez what happened to the deal on Friday and Hernandez said: "I don't know, I can't talk right now. You will have to wait until Dewey comes." Hernandez told the detectives to return at one o'clock and "we will talk." At that time, the detectives placed Hernandez under arrest. Edwards was also placed under arrest when he arrived an hour later.
Detective Moore further testified that his office investigated Edwards' statement that he had a source who was in jail in South Carolina. Moore testified that on the Monday before he met Edwards, he called the South Carolina Sheriff's Office and learned that two Cuban males had recently been arrested for selling cocaine to a narcotics officer. One of the men was Hernandez. Moore produced documentation showing a photograph of Hernandez and the charges made against him in South Carolina. Hernandez had been charged with trafficking in cocaine and conspiracy to traffic in cocaine. The date of the charges was October 25. Moore testified that Edwards first made reference on November 3 that this person was in jail.
The trial court granted the defendants' motions to suppress the defendants' various statements made during the above described events and transactions, holding that there was not substantial evidence of a conspiracy and the defendants' participation in it independent of the hearsay statements of the defendants.[2]
Section 90.803(18)(e), Florida Statutes (1987), contains the "coconspirator rule," which permits the admission of statements made by coconspirators into evidence against a defendant who is a member of the conspiracy even though the statements would otherwise be inadmissible as hearsay:
90.803 Hearsay exceptions; availability of declarant immaterial.  The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
* * * * * *

*292 (18) ADMISSIONS.  A statement that is offered against a party and is:
* * * * * *
(e) A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy. Upon request of counsel, the court shall instruct the jury that the conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.
Under the case law interpreting the coconspirator rule, such statements are admissible against coconspirators only if substantial evidence, independent of the statements themselves, is presented showing: (1) that a conspiracy existed; (2) that the declarant/coconspirator and the defendant against whom the statements are offered were members of the conspiracy; and (3) that the statements were made during the course and in furtherance of the conspiracy. Briklod v. State, 365 So.2d 1023 (Fla. 1978); Honchell v. State, 257 So.2d 889 (Fla. 1971); State v. Morales, 460 So.2d 410 (Fla. 2nd DCA 1984). The initial determination of whether the requisite independent evidence exists is an evidentiary matter for the trial court. Saavedra v. State, 421 So.2d 725 (Fla. 4th DCA 1982); Garcia v. State, 492 So.2d 819 (Fla. 2d DCA 1986).
In Morales, the Second District adopted the two-prong procedure established in United States v. James, 590 F.2d 575 (5th Cir.1979) which procedure calls for the trial judge to: (1) first make an initial determination of admissibility, applying a substantial evidence standard; and (2) then, after presentation of all the evidence, the trial judge determines whether there is a preponderance of independent evidence that the conspiracy existed, that the conspirators and defendant were members of the conspiracy, and the statements were made in the furtherance of the conspiracy. 590 F.2d at 582. In applying the first prong, the Morales court said that, in conformance with Section 90.803(18)(c), the trial court should, upon defendant's motion, instruct the jury that the conspiracy and each member's participation in it must be established by independent evidence. As pointed out by the Morales opinion, this instruction is often called the "Apollo instruction" based upon United States v. Apollo, 476 F.2d 156 (5th Cir.1973) and that James overruled Apollo. Nevertheless, as held in Boyd v. State, 389 So.2d 642 (Fla. 2nd DCA 1980), the Apollo rule "lives on in Florida" because of the express language of Section 90.803(18)(e) which is not included in the federal counterpart, Rule 801(d)(2)(E), Federal Rules of Evidence. In applying the second prong, Morales endorses the preponderance test to be applied at the conclusion of all the evidence.
Morales has been called into question by the Third District's recent decision in Romani v. State, 528 So.2d 15 (Fla. 3d DCA 1988). In Romani, the court held that Morales and the cases cited therein are no longer sound law and the standard of proof which the state must initially present to establish the existence of a conspiracy and a defendant's participation in it is a preponderance of the evidence.[3] In so holding, the court relied on the recent United States Supreme Court decision in Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).
The Court in Bourjaily reevaluated the issue of the admissibility of coconspirator statements in light of Federal Rule of Evidence 104(a).[4] The Court confirmed that *293 the existence of a conspiracy and a defendant's participation in it are preliminary questions of fact to be resolved by the court under Rule 104, but noted that the Federal Rules did not define the standard of proof to be observed by the court in resolving such questions. The Court relied on prior decisions which addressed the admissibility of other preliminary factual questions in which the Court has traditionally required that such matters be established by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (preliminary fact that custodial confessant waived rights must be proved by preponderance of the evidence); United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (voluntariness of consent to search must be shown by preponderance of the evidence); Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of confession must be demonstrated by a preponderance of the evidence). The Court reasoned that the preponderance standard is appropriate because it ensures that before admitting evidence, "the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." 483 U.S. at ___, 107 S.Ct. at 2779, 97 L.Ed.2d at 152.
In Romani, the Third District, in referring to Bourjaily's modification of the quantum of proof required in the preliminary stage from "substantial" to "preponderance," stated:
Relying on prior decisions which addressed the admissibility of other preliminary factual questions, such as United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (voluntariness of consent to search must be shown by a preponderance of the evidence) and Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of confession must be demonstrated by a preponderance of the evidence), the Court reasoned the same preponderance of the evidence standard should be applied in determining preliminary questions regarding admissibility of coconspirator statements. 107 S.Ct. at 2778-79.
This holding overrules that portion of the James decision which held a court should apply the substantial evidence standard in its preliminary analysis. The second prong of James, applying a preponderance of the evidence standard at the conclusion of all the evidence, becomes redundant inasmuch as a court is now required to apply this standard in its preliminary determination. The Florida cases, including Morales and Saavedra, which followed James are no longer sound law. We therefore adopt the holding of Bourjaily that "when the preliminary facts relevant to [section 90-803(18)(e)] are disputed, the offering party must prove them by a preponderance of the evidence." 107 S.Ct. at 2779.
528 So.2d at 20. We agree with that portion of the Romani holding and adopt it as our own.
However, we cannot agree with Romani in its other principal holding that the Bourjaily decision relative to the type of evidence which may be considered in the trial court's preliminary determination of admissibility is applicable in the operations of the pertinent Florida Evidence Code provision, Section 90.803(18)(e).
As recognized in Bourjaily, the federal courts of appeal had widely adopted the view  the same view embraced by the Florida courts as illustrated by the authorities mentioned above  that a court should not consider the hearsay statements themselves in determining the preliminary facts relevant to coconspirator's out-of-court statements. 483 U.S. at ___, 107 S.Ct. at 2780, 97 L.Ed.2d at 154. Such determination would have to be based upon independent proof. Bourjaily, in interpreting Federal Rule of Evidence 801(d)(2)(E) (the federal counterpart of Florida's Section 90.803(18)(e)), held that the trial court may consider the hearsay statements themselves in determining whether a conspiracy has been adequately demonstrated. However, this holding relied significantly upon Federal Evidence Rule 104(a) which specifically provides that the trial court is "not *294 bound by the rules of evidence except those with respect to privilege" in determining preliminary questions concerning the admissibility of evidence. The Florida Evidence Code contains no such provision. Also, Section 90.803(18)(e) of the Florida Code contains the following provision not included in the Federal Evidence Rules:
Upon request of counsel, the court shall instruct the jury that conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.
We are not persuaded to embrace the Third District's view in Romani that Bourjaily is controlling on this point, particularly inasmuch as Bourjaily is not constitutionally based but is, rather, predicated upon a construction of the Federal Rules of Evidence which, as above mentioned, are materially different with respect to the instant subject.
We next turn our attention to the identification of the proof of the existence of a conspiracy and the defendants' participation in it independent of the alleged coconspirator's statements. The law is well-settled that the crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of this crime. Gonzalez v. State, 455 So.2d 1131 (Fla. 2nd DCA 1984); Ramirez v. State, 371 So.2d 1063 (Fla. 3d DCA 1979); King v. State, 104 So.2d 730 (Fla. 1957); § 777.04(3), Fla. Stat. (1987); 16 Fla.Jur.2d Conspiracy § 1547 (1979). It is also clear that the conspiracy need not be proved by direct evidence; participation in a criminal conspiracy may, of course, be shown by circumstantial evidence. Resnick v. State, 287 So.2d 24 (Fla. 1973); Edwards v. State, 516 So.2d 285 (Fla. 2nd DCA 1987); Gonzalez, supra.
There appears to be little question from the evidence which was presented to the trial court that the statements made by Edwards prior to November 5 purporting to implicate Hernandez are not admissible against Hernandez because there is no independent evidence that the two of them were engaged at that time in the alleged conspiracy. The same is true with respect to any such statements made by Edwards on November 5 prior to his telephone call in response to which Hernandez met with Edwards and the undercover detectives at the Taco Bell to negotiate the drug deal. However, the events and happenings (as earlier detailed in this opinion) which occurred at and subsequent to the November 5 meeting at the Taco Bell were such as to satisfy the Bourjaily preponderance of the evidence standard for the existence of a conspiracy. We are, therefore, of the view that the order appealed is in error to the extent that it suppressed such of those defendants' hearsay statements implicating the codefendant as were made subsequent to the November 5 telephone call.[5]
Appellee urges the applicability of Schueren v. State, 370 So.2d 83 (Fla. 1st DCA 1979) wherein this court held that the evidence was insufficient to prove that Schueren conspired with others to possess marijuana and that the state's evidence "showed only that [Schueren] was a go-between in a transaction involving others, and that in fact that transaction never proceeded beyond preliminary stages." Id. at 84. In contrast, the evidence in the case at bar, together with all reasonable inferences therefrom, is sufficient to establish appellee Edwards as a full-fledged conspirator, and not simply a "go-between" in relation *295 to Hernandez and the undercover officers.[6]
We also reject appellee's suggestion that Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987) is controlling. There, the court held that a conspiracy may not be inferred from aiding and abetting. We do not disagree with this principle. However, in the case at bar Edwards was not merely an aider and abettor. Unlike Voto, Edwards was the initiator of the drug transaction and the preponderance of the evidence was supportive of a conspiratorial agreement between Edwards and Hernandez.
We have examined other related authorities, some of which appellees have relied upon, and find that they do not support the suppression order. In Edwards v. State, 516 So.2d 285 (Fla. 2nd DCA 1987), the Second District held that the trial court erred in denying the defendant's motion for judgment of acquittal because the information charged that the conspirators were the defendant and a confidential informant who was cooperating with the police, and when one of two persons charged with conspiracy is a government agent, the other person may not be convicted of the conspiracy. Significant to us though is the further observation by the Second District that had the defendant been properly charged with conspiring with the correct party  a person known as "Al Joe"  the evidence would still not have supported a finding of conspiracy between the defendant and Al Joe. The instant case is materially distinguishable from that situation because in the above case, there was no evidence of any contact between the defendant and Al Joe. This is in sharp contrast to the instant case in which there was significant contacts between the alleged conspirators.
Also distinguishable is Velunza v. State, 504 So.2d 780 (Fla. 3rd DCA 1987). There, it was the government agent (confidential informant) who made the telephone call and took Velunza's codefendants and the police officers to a nearby house. At the house, they encountered Velunza who pointed to a bag containing the drugs. The Third District correctly held that the evidence failed to prove Velunza guilty of conspiracy.
Nichols v. State, 390 So.2d 1238 (Fla. 2nd DCA 1980), cited by appellees, is likewise distinguishable as can readily be seen from a cursory review of the case. In Nichols, there was no evidence independent of Knox's hearsay statements implicating Nichols in a conspiracy. An undercover agent had arranged to buy cocaine from Knox. A person who apparently could not be seen sufficiently to identify  but alleged to be the defendant Nichols  handed Knox a package of cocaine. In Nichols, the state simply failed to establish that Nichols had any contact with Knox in connection with the cocaine. Therefore, the Second District found that it was error for the trial court to admit the hearsay statements of Knox implicating the defendant Nichols, and the convictions of possession and sale of cocaine were reversed.
Finally, the Fifth District's holding in Moore v. State, 503 So.2d 923 (Fla. 5th DCA 1987), is not at all inconsistent with our opinion in the instant case. Consistent with Moore, we have held that the hearsay statements of Edwards made prior to the November 5 telephone call, which statements implicated Hernandez, were inadmissible against Hernandez because of the absence of any independent evidence of a conspiracy. Unlike Moore, in which the independent evidence was limited to establishing Moore's presence and participation in the drug sale on a particular date, we *296 have evidence, in the present case, of ongoing contact and negotiations involving the alleged conspirators commencing with the telephone call on November 5.
The independent evidence, when viewed in its totality sufficiently shows the defendants' participation in the alleged conspiracy commencing with the telephone call on November 5. See State v. Morales, 460 So.2d 410, 416 (Fla. 2nd DCA 1984).
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
SMITH, C.J., and MILLS, J., concur.
NOTES
[1] The state has the right to appeal an order suppressing before trial the admissions of a coconspirator under Florida Rule of Appellate Procedure 9.140(c)(1)(B), which provides that the State may appeal an order "(s)uppressing before trial confessions, admissions or evidence obtained by search and seizure." State v. Brea, 530 So.2d 924 (Fla. 1988).
[2] Although the trial judge's order is entitled "Order Granting Defendants' Motion To Suppress Hearsay Statements Of Alleged Co-Conspirators," the trial judge states at the end of his order that "the defendants' identical Motions to Dismiss are granted." Our review of the record establishes that no motions to dismiss had been filed at the time the order was entered. We therefore construe the trial court's order as an order granting the defendants' motions for suppression, and not as an order of dismissal.
[3] The preponderance of the evidence standard  evidence which as a whole shows that the fact sought to be proved is more probable than not  is a stricter standard than the previous substantial evidence standard. Substantial evidence has been defined as evidence "which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Black's Law Dictionary 1281 (5th ed. 1979); Marker v. Finch, 322 F. Supp. 905, 910 (D.Del. 1971); State v. Morales, 460 So.2d 410, 415 (Fla. 2d DCA 1984).
[4] The Federal Rules of Evidence were adopted in 1975, subsequent to a number of the Supreme Court decisions dealing with admissibility of coconspirator statements. E.g. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).
[5] As previously indicated, the defendants' motions to suppress and the order entered thereon dealt only with the use as evidence against each defendant of the statements made by the co-defendant and the applicability in connection therewith of the coconspirator exception to the hearsay rule. Our holding, therefore, does not address such issues as the admissibility of Edwards' statements as evidence against himself and so we express no view as to whether Edwards' statements which he made prior to the November 5 telephone call to Hernandez may be admissible against Edwards. Such issues have not been raised either in the trial court or on appeal.
[6] We would also point out that the conspiracy charged in Schueren was confined to a conspiracy to possess drugs. Apparently, significant to the court's decision was the fact that there was no evidence that Schueren

... sought or agreed to obtain possession or exert dominion and control over the Gainesville marijuana at any time. Furthermore, there is no evidence that Mitchell and/or Ryder ever formed the requisite intent to possess the marijuana. In short the evidence was simply insufficient to prove the conspiracy charged.
370 So.2d at 84. In contrast, in the instant case, in order to establish the charge of conspiracy to traffic (sell, manufacture, deliver or possess), it is not essential for the state to show that either of the defendants sought or agreed to obtain possession of the marijuana or formed an intent to possess the marijuana.