643 So.2d 1204 (1994)
Tracy Leon EVANS, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2591.
District Court of Appeal of Florida, First District.
October 24, 1994.
*1205 Nancy A. Daniels, Public Defender, Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Sonya Roebuck Horbelt, Asst. Atty. Gen., Tallahassee, for appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of convictions, based upon an aiding and abetting theory, for shooting into a building and criminal mischief. He argues that the trial court erroneously denied his motion for a judgment of acquittal as to both charges, because the evidence was legally insufficient to establish that he had aided or abetted the commission of either offense. We agree and, accordingly, reverse.
The only evidence presented at trial which tied appellant in any way to the offenses charged was a statement voluntarily given by appellant to law enforcement officers shortly after the offenses had been committed. No other evidence was offered which suggested any involvement by appellant in either offense.
Viewed in a light most favorable to the state, the evidence presented at trial consisted of the following. At about 9:15 p.m. on a Sunday evening, the victims' home and store were sprayed with bullets. (Some 57 rounds were later counted.) Miraculously, nobody was injured. Having heard the gunfire, a witness looked out and saw "a sporty" "stepside, new modeled Chevrolet pickup" which was "fancy colored," either "a teal blue or a teal green." All that the witness was able to say about the occupants of the truck was that there were at least three black people in the rear. Approximately an hour later, a truck matching the description given to law enforcement was stopped, some 14 or 15 miles from the site where the shooting had occurred. There were two black males in the rear of the truck, and three in the cab. The witness who had seen the truck earlier was brought to the site where it had been stopped, and positively identified it. The occupants of the truck were transported to a detention facility for questioning. After having been advised of his rights, appellant agreed to give a statement, a tape recording of which was played for the jury.
In his statement, appellant said that, earlier that day, Kelvin Godfrey had called him and told him that a friend of theirs had been beaten up by the owner of the store. He and Wendell Scott, who owned the truck, drove to Godfrey's house, to see the friend who had been beaten. When they arrived, the friend was not there. They settled in to watch a ball game on television. Godfrey and two other individuals, Tim Garrett and "a black guy we don't know," began discussing shooting out the windows of the store in retribution for the earlier beating of their friend. It seemed to appellant as though the other three had discussed such a plan earlier, before he and Scott had arrived. When the ball game ended, all five got into Scott's pickup. Scott was driving, and appellant was in the passenger seat. The other three individuals were all in the rear. They drove by the store, and one or more of the individuals in the rear fired at the store. Appellant was not paying too much attention, because he was listening to the radio. After the shooting, Scott drove back to Godfrey's house, where Godfrey, Garrett and the third person got out. Scott and appellant then left. The other three people in the truck when it was stopped had had nothing to do with the incident. Appellant was familiar with firearms because he had formerly been a correctional officer. However, he had not "touched a gun" since he had left that job.
To secure a conviction on an aider and abettor theory, the state must establish (1) that the defendant helped the person who *1206 actually committed the crime by doing or saying something that caused, encouraged, incited or otherwise assisted that person to commit the crime; and (2) that the defendant intended to participate in the crime. E.g., Howard v. State, 473 So.2d 841 (Fla. 1st DCA 1985). Given the evidence presented at trial, both the trial court and the jury were obliged to accept appellant's statement as true, because it was reasonable, unrebutted and unimpeached. E.g., Dudley v. State, 511 So.2d 1052 (Fla. 3d DCA 1987). In fact, but for appellant's statement, there was no evidence even placing appellant at the scene of the offenses.
We are unable to distinguish the facts of this case from those in C.P.P. v. State, 479 So.2d 858 (Fla. 1st DCA 1985). There, the appellant had been found to have committed the offenses of burglary and grand theft, based upon an aider and abettor theory, and adjudicated a delinquent child. On appeal, he argued that the evidence had been legally insufficient to establish his guilt. The court summarized the evidence as follows:
The evidence against appellant consists essentially of the testimony of a store manager stating that his store was burglarized, ... and appellant's confession, admitting his presence in an automobile at the store premises while two other persons left the car, and returned two and one-half hours later, placing four or five bags in the trunk. Appellant also admitted having prior knowledge that the two others intended to burglarize the store and take goods therefrom. Finally, he admitted that another person remained in the car for the purpose of serving as a lookout.
Id. at 859. Noting that "`mere knowledge that an offense is being committed is not the same as participation with the requisite criminal intent,'" and that "presence at the scene of the offense and flight from the scene are insufficient to establish participation" (id.), the court reversed, holding that, as a matter of law, the state had failed to establish that the appellant was guilty, on an aider and abettor theory, of either offense.
Viewed in a light most favorable to the state (but accepting as true appellant's uncontradicted and unimpeached version of what transpired), the evidence presented at trial established that appellant knew, when he got into the truck, that one or more of the persons in the rear intended to shoot out the windows of the store; that one or more of the persons in the rear of the truck did shoot at the store as the truck drove by; and that appellant was a passenger in the cab of the truck when the shooting occurred. Based upon C.P.P. v. State, such evidence is legally insufficient to establish appellant's guilt on an aider and abettor theory, and his convictions must be set aside. Accordingly, appellant's convictions for shooting into a building and criminal mischief are reversed, and the case is remanded with directions that appellant be discharged.
REVERSED and REMANDED, with directions.
ALLEN, J., concurs.
LAWRENCE, J., dissents with written opinion.
LAWRENCE, Judge, dissenting.
I respectfully dissent, for I am of the view that the trial judge did not err in refusing to set aside the jury verdict finding Evans guilty. The controlling authority in this case is our decision in A.B.G. v. State, 586 So.2d 445 (Fla. 1st DCA 1991), dismissed, 605 So.2d 1261 (Fla. 1992). The facts recited in that case are as follows:
The only witness at the adjudicatory hearing was a security officer at an Albertson's store in Jacksonville, Florida. He testified that on October 25, 1990, he saw four boys, including the appellant, enter the store. The group proceeded directly to the condom section.
Three of the boys, including the appellant, stood elbow-to-elbow directly in front of the condoms. The other two boys began removing boxes of condoms from the display. One of the boys broke open a box of two condoms, removed them from the box, and placed them in the inside pocket of his jacket. The boy who stood immediately next to appellant put two boxes into the right front pocket of his jacket. Appellant (at least four or five times) looked *1207 down at the condoms, then to the front of the store and to the rear of the store. Appellant's actions were continuous, occurring both before and after the other boys stuffed the condoms into their pockets. Appellant and the other boys also conversed during the theft. The fourth boy stood behind the other three and also looked to the front and back of the store.
The boys walked together to the front of the store and past the cash register without paying for the merchandise. As they attempted to exit the store, they were confronted by the manager. Appellant turned away from the store manager and walked back into the lobby.
Id. at 446-47.
In concluding that the evidence was sufficient for the fact-finder to find that A.B.G. was an active participant in the crime, the A.B.G. court said:
[T]he fact finder could reasonably infer from the evidence presented that appellant's hypothesis of innocence, that he didn't know the other boys were going to take the condoms and that he was just nervously looking around, was not reasonable. The boys entered the store together and proceeded directly to the condom display. Appellant stood elbow-to-elbow with a boy who was stuffing condom packages into his front jacket pocket. He was observed talking with the other boys during the commission of the crime. The appellant demonstrated a deliberate pattern of conduct, both before and after the other boys had concealed the condoms. These factors, taken in the light most favorable to the state, are inconsistent with appellant's purported lack of knowledge and mere nervous presence at the crime scene. A fact finder could reasonably infer that, as a result of appellant's consistent actions both before and after the actual taking of the property, the only reasonable hypothesis from the evidence presented was that appellant intended to be, and was, an active participant in the theft as a lookout.
Id. at 447.
In the instant case, Evans does not argue any hypothesis of innocence, except that he "merely went along for the ride." As acknowledged by the majority, the evidence must be viewed in a light most favorable to the State. I can only conclude (as did both the jury and trial judge) that Evans' statement and argument, suggesting that he was not an active participant, should be rejected as unreasonable on its face.
The majority view relies on Dudley v. State, 511 So.2d 1052 (Fla. 3d DCA 1987), for the proposition that the jury had no choice but to accept the statement of the defendant (Evans) as true in its entirety, because it was reasonable, unrebutted, and unimpeached. The Dudley court also said:
On the other hand, where the defendant's exonerating testimony (a) is not reasonable on its face, or (b) is contradicted by other evidence in the case, or (c) is otherwise impeached, the trier of fact is privileged to reject such testimony and convict the defendant of the crime charged, providing, of course, there is otherwise sufficient evidence of guilt.
Id. at 1057-58.
The jury was justified in rejecting portions of Evans' statement, while believing other portions, because some of it was facially unreasonable. In analyzing the statement, the jury could have concluded that the following facts were significant in determining whether to believe or disbelieve some or all of the statement. Evans was a former correctional officer, and thus no stranger to the law enforcement profession. He was familiar with firearms, having previously "qualified" with a ".38" and an "AR ... 15"; he identified the multiple shots fired from the truck as probably having come from a .22 rifle, and not from a larger caliber weapon; he saw a .22 rifle at the house before the group entered the truck. Evans had a motive for committing the crime, in that the victim of the instant offense had allegedly hit Evans' good friend with a gun. Evans heard about the incident, and decided to look for the friend and "see what it was all, what all this was about and stuff." He went to another friend's house in pursuit of this effort, when other friends also arrived. These friends discussed, in Evans' presence at the house, a plan to "ride by the store and they say they *1208 was going to shoot in the windows." The friends had a .22 rifle "just laying on the chair" in the house at the time of the conversation. While still at the house, Evans related:
We was  we was like watching the game and then they was talking about what happened to Max [Evans' good friend] and talking about they was wanting to shoot, shoot the windows out the, out the store because the guy worked there or owned it or whatever, and then we left.
Other evidence from witnesses reflected the following facts. Approximately fifty-seven rounds were fired at the scene of the crime. The pick-up truck was stopped by police approximately one hour following the incident, at which time all five of the persons still occupied the truck, although there were now three persons in the cab, including Evans, and only two persons in the cargo bed.
The jury was warranted in rejecting portions of Evans' statement as facially unreasonable, and could have reached that conclusion on the following basis. A reasonable person, especially a former correctional officer, with no intent to commit a crime, would not have left the house with friends in the same motor vehicle, knowing that his companions were en route to commit a crime and that its commission was imminent. There was no suggestion from Evans' statement, or any other evidence, that Evans was under any coercion or pressure to accompany those committing the crime. Following the criminal episode, Evans remained with those committing the crime in the same truck until all were detained by the police, approximately one hour later; he, otherwise, did nothing to disassociate himself from them. A reasonable person, with no criminal intent, would have sought to sever any association with those involved in the crime, however belated such an attempt might take place. A reasonable person would have known that, under the circumstances of this case, his mere presence and election to accompany his companions on the criminal episode would have communicated a subtle message of approval and encouragement. A reasonable person, with no criminal intent, would have attempted to dissuade his companions from a serious violation of the law, especially when the potential for serious bodily injury or death was a reasonable or probable result.
The standard jury instruction embraces the long-standing principle of law that credibility issues are properly within the province of the jury:
You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
Fla.Std.Jury Instr. (Crim.) 15.
The jury was warranted in relying upon this instruction, rejecting portions of Evans' statement as facially unreasonable, and choosing to believe those portions that were reasonable.
Notwithstanding the majority's view that there was no participation (and thus no intent) on Evans' part, intent to commit a crime can be proven in other ways. Two of Florida's district courts of appeal have held that intent may be proven either by showing that the aider and abettor had the requisite intent himself, or that he knew that the principal had the intent. Stark v. State, 316 So.2d 586 (Fla. 4th DCA 1975), cert. denied, 328 So.2d 845 (Fla. 1976); S.G. v. State, 591 So.2d 294 (Fla. 3d DCA 1991).
Evans admitted by his own statement that he knew that the principals had the intent to commit the crime before they left the house. Thus, there is ample authority for concluding that Evans had the requisite intent.
The majority view relies on C.P.P. v. State, 479 So.2d 858 (Fla. 1st DCA 1985), to conclude that Evans lacked the requisite criminal intent. However, C.P.P. may be distinguished from Evans. In C.P.P., the facts leave open the hypothesis that C.P.P. acted under coercion, or similar constraint, that he was thwarted in any attempt to disassociate himself from the principals, or that he did not take seriously his principals' announced plans until it was too late. However, Evans' statement reflects that he was not acting under constraint, but could have distanced himself from the principals at any time, had it not been for an intent to participate in the crime.
*1209 I would affirm the judgment of the trial court.