652 So.2d 932 (1995)
Hubert CHRISTIE, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3073.
District Court of Appeal of Florida, Fourth District.
March 29, 1995.
Bruce A. Zimet, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, Douglas J. Glaid and Sharon A. Wood, Asst. Atty. Gen., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
The opinion of the court filed January 4, 1995, is withdrawn, and the following opinion is substituted which is identical except to clarify that the standard of proof employed to evaluate the independent evidence of conspiracy *933 is by the preponderance of evidence as set forth in Romani v. State, 542 So.2d 984 (Fla. 1989).
We affirm the conviction, but write to explain the reasons we find that the evidence presented to the jury supported convictions for three counts of first-degree felony murder.
Defendant was convicted of first-degree felony murder based on the underlying felony charge of aiding and abetting trafficking in cocaine. The crime arose out of a reverse sting aimed at obtaining large quantities of cocaine by claiming to be interested in its purchase and then double crossing the cocaine suppliers by forcibly obtaining the cocaine from them at the site of the drug deal. In the execution of the reverse sting, participants Tommy Felts, Gil Fernandez and Michael Carbone kidnapped and then murdered the suppliers. It is undisputed that defendant was not present when the actual drug deal occurred or when the murders were committed. The state's theory, alleged to be borne out by testimony from witness and participant, Michael Carbone, was that defendant was the boss of the drug deal, participated in its planning and supervised its execution.
The threshold question to address is whether there was competent, independent evidence, without consideration of any hearsay statements of co-conspirators, to establish defendant as a participant in a conspiracy to traffic in cocaine. Before the jury could consider any hearsay evidence of the co-conspirators, the state must have established, by a preponderance of evidence, through defendant's actions or his statements or through other competent, independent evidence that defendant participated in a conspiracy. Romani v. State, 542 So.2d 984, 985 n. 3 (Fla. 1989); Gueits v. State, 566 So.2d 829 (Fla. 4th DCA 1990); State v. Edwards, 536 So.2d 288, 292 n. 3 (Fla. 1st DCA 1988). This court must examine whether there was "substantial evidence, free from the taint of hearsay, upon which the court could find, at least preliminarily, that a conspiracy existed and the person objecting to the hearsay statements was an active participant." See Verni v. State, 536 So.2d 1162, 1164 (Fla. 2d DCA 1988), review denied, 542 So.2d 1335 (Fla. 1989).
It is not necessary for a conspiracy to be charged before hearsay statements are admissible under the co-conspirator exception. Tresvant v. State, 396 So.2d 733, 736 (Fla. 3d DCA), review denied, 408 So.2d 1096 (Fla. 1981). As long as there is sufficient independent evidence of the conspiracy independent of the hearsay testimony, the hearsay statements made by co-conspirators are admissible. See Romani; Boyd v. State, 389 So.2d 642, 644 (Fla. 2d DCA 1980).
In contrast to Gueits, where the sole independent evidence was defendant's mere presence at the scene of the crime, we conclude that here the testimony of a key witness establishes independently, albeit circumstantially, defendant's connection with the criminal scheme to traffic in cocaine. Of the two witnesses at trial who provided testimony concerning defendant's involvement, we focus solely on the testimony of Michael Carbone because his testimony included evidence of defendant's independent actions and statements.
Michael Carbone, the key witness to defendant's involvement, was himself a participant in the crime, who testified with the promise of immunity. Of the three other participants, Tommy Felts was deceased and Gil Fernandez was jointly tried with defendant. Carbone testified he became involved in the crime through his friend and fellow body builder Tommy Felts who asked him to provide surveillance for a drug deal. Felts introduced him to Fernandez at a preliminary meeting at Felts's house, the site of the drug deal. On the day before the actual commission of the crime, but when the original drug deal was planned to take place, Felts and Fernandez sent Carbone outside to perform surveillance and wait in his car for a signal before entering Felts's house with a gun. While he was waiting, defendant Christie pulled up, got out of his car carrying a gun and began circling the car Carbone was in. It appeared to Carbone that defendant was engaged in surveillance, although he had no prior knowledge of defendant being involved in the drug deal. Carbone knew defendant *934 from the gym where they all worked out and observed that defendant did not appear surprised to see Carbone present. After the drug suppliers left, defendant and Carbone then entered the house together and defendant was present when statements were made directed to defendant concerning the aborted drug deal and why it did not take place as had been planned. Although Carbone did not hear defendant make any comments, defendant remained with Felts and Fernandez after Carbone left.
The next day the plan was executed. The active participants, Felts, Fernandez and Carbone obtained the drugs by kidnapping the victims and then, after several hours, driving to a remote spot in Dade County, where they murdered them. Shortly after the victims were murdered, the cocaine obtained and the murder weapon disposed of, a telephone call was made. Fernandez, Felts and Carbone drove to a gas station, with blood still on them, where Carbone observed defendant exit a vehicle and ask "was the job done?" Defendant then turned to Felts and Fernandez and stated "you guys come here." Although Carbone did not hear the conversation, it appeared to him that defendant did most of the talking.
After Carbone received his share of money for his participation, defendant cautioned Carbone not to date an individual who was the sister of one of the murder victims.
Under the preponderance of evidence test, we conclude this is a sufficient evidentiary predicate for the court to have permitted the jury to hear the additional hearsay statements linking defendant to the crime. Specifically, this additional testimony detailed the conversation in the house in the presence of Carbone the day before the crimes actually occurred. The co-defendant told defendant that they needed more money, as an explanation for why the deal did not go through and then defendant continued to be present for additional conversations with Felts and co-defendant after Carbone was told to leave. Carbone also testified that he was advised by co-defendant that defendant was the leader. Carbone further testified that co-defendant Fernandez told him defendant was receiving part of the money for the drug deal which was one reason why his share had to be cut back. Finally after Carbone received his share, Fernandez told him defendant did not want him to buy a Jaguar with his money because it would be too flashy, "too much at the time."
Defendant attacks the credibility of Carbone. However, his credibility was for the jury to evaluate. When considering a motion for judgment of acquittal, the court construes all facts adduced in evidence as admitted by the defendant and draws every conclusion favorable to the state which is fairly and reasonably inferable from that evidence. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); Lynch v. State, 293 So.2d 44, 45 (Fla. 1974). The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the appellate court will not reverse. State v. Law, 559 So.2d 187, 188 (Fla. 1989); Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237, (1984); Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983) disapproved on other grounds, Williams v. State, 488 So.2d 62 (Fla. 1986).
Defendant contends the state failed to prove he was a principal in the felony of trafficking in cocaine and further that he could not be convicted even under the aider and abettor theory. However, the transaction that took place on April 1, 1983 cannot be viewed in a vacuum. One cannot totally ignore the events of the evening before which was a prelude to or the beginning of the April 1, 1983 transaction which led to the murders of the three cocaine sellers, as well as the communications that took place between defendant and Fernandez and Felts immediately following the murders on April 1, 1983.
To convict defendant as an aider and abettor, the state had to show that defendant (1) assisted the actual perpetrators by doing or saying something that caused, encouraged, assisted or incited the perpetrators to actually commit the crime; and (2) intended to participate in the crime. Howard v. State, 473 So.2d 841 (Fla. 1st DCA 1985). Thus, while it is true that neither *935 mere presence or knowledge that an offense is being committed can be construed as participating in the crime, in the case at bar, the totality of the circumstances showed that defendant was a willing participant in the trafficking in cocaine transaction which began the evening before the April 1, 1983 consummation.
HERSEY, POLEN and PARIENTE, JJ., concur.