747 So.2d 393 (1996)
Warren TAYLOR, a/k/a Warren Gerrard Taylor, Appellant,
v.
STATE of Florida, Appellee.
No. 94-04158.
District Court of Appeal of Florida, Second District.
April 10, 1996.
James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
QUINCE, Judge.
Warren Taylor appeals his convictions and sentences imposed for two counts of armed robbery. Because we conclude there was insufficient evidence of Taylor's participation as an aider and abettor to the robberies, we reverse.
Taylor and Kenneth Washington were charged with robbery of two ladies in the parking lot of a Circle K store shortly after midnight on February 3, 1994. Earlier that night Taylor had gone to a nearby Presto store where he was employed to request cleanup work. While he was in the store, another man was sitting in the driver's seat of Taylor's car trying to conceal himself from passing customers. Taylor left the store, entered the passenger side of the car, and he and the other person drove off. They crossed the highway and stopped on a side street adjacent to the Circle K. The car stopped, moved forward another fifty feet, stopped, then moved another fifty feet, and parked in a dark area with its lights on.
Ms. Christy Browning, one of the robbery victims, was in her friend's car parked at the Circle K store. Ms. Dorothy Straker, the other robbery victim, had gone inside the store. Ms. Browning observed the movements of Taylor's vehicle *394 while she was waiting for Ms. Straker to return to the car. Ms. Browning's view of the car, however, was partially obstructed by some bushes along a chainlink fence and by the absence of street lights. Ms. Browning heard a car door open, saw a light from the front passenger door, and saw the passenger walk around the front of the car to the driver's side. She heard two people talking but could not hear the conversation. She heard another door open, heard two doors close and saw that the passenger door had been closed. The car remained in the same position with the headlights on.
Shortly thereafter, Ms. Straker came out of the Circle K. As Ms. Straker approached the front driver's side of her car, Ms. Browning heard running footsteps. She saw someone from about the middle of the legs to the shoulder standing near Ms. Straker, and that person had a gun. Ms. Browning heard the person say something to Ms. Straker, and Ms. Straker said she did not have anything. The person said, "Give me your pocketbook." Ms. Straker took the pocketbook and threw it into the person's chest. After getting the pocketbook, the gunman walked around to the passenger side of the car. He opened the door, pointed the gun and demanded Ms. Browning's purse.
During this exchange, Ms. Browning was able to see more of the gunman. He was wearing a dark, hooded, sweatshirt type jacket. He had on a mask that was either black or navy blue, made of shiny, stretchy material, like spandex, with bright neon green stitching going through it. The only parts of the face exposed were the eyes, lips and nose. Ms. Browning could tell that the gunman was black. He was approximately six feet tall with a skinny build. When the gunman turned away after getting the purse, Ms. Browning began to exit the car. As the gunman was running, he yelled to the victims to get down on the ground. Ms. Browning did not watch the gunman; therefore, she could not say that he got into the vehicle she had previously been watching. Ms. Browning did not get on the ground. She turned and ran into the store. Ms. Browning asked the clerk to dial 911. The clerk asked what number, and Ms. Browning turned and ran out of the store. The persons inside locked the door behind her.
Ms. Browning ran across Highway 17 to the Presto store and asked the person behind the counter to call the cops. The lady asked what had happened. When she was told of the robbery, she called the police. Ms. Browning told Mike Ford, a person who was in the Presto store when she asked for assistance, that the robber had been in the Presto store just before the robbery. Mr. Ford and his son got into his personal vehicle and started after the robber.
After leaving the store, Mike Ford stopped at his own place of business, but then spotted the station wagon going north on Highway 17 toward Fort Meade. He followed closely for about seventeen minutes. While following the car, Ford saw what appeared to be a white sack and another object thrown from the driver's window, as well as something thrown from the passenger's window. Ford's son was keeping the police informed of their location via cellular phone. The Fords lost the car in Fort Meade. When they saw it again, it was being followed by two police cars.
The police officers stopped the car and an officer approached each side. Taylor was the driver of the vehicle, and Kenneth Washington was the passenger. Taylor exited the vehicle as the officers approached. Both suspects were frisked, but no weapons were found. The police also searched the vehicle, but again no weapons were located. A wallet containing a woman's identification was found on the back seat. A roll of quarters was found on the driver's floor, and lottery tickets were found on the front floor. Two black and green spandex masks were found in the rear of the station wagon. *395 The police found eighty dollars on Washington, and nine dollars and change on Taylor.
The police searched the route taken by the station wagon but found no weapon. One victim recovered everything, and the other victim recovered all but some jewelry.
On these facts, Taylor was convicted of two counts of armed robbery after a motion for judgment of acquittal was denied. Both the state and the defense agree that Taylor's convictions can only be sustained if there is sufficient proof of his participation as an aider and abettor of these robberies. To be convicted as an aider and abettor the state must show the defendant assisted the actual perpetrator by doing or saying something which caused, encouraged, assisted or incited the perpetrator to commit the crime and the defendant intended to participate in the crime. Christie v. State, 652 So.2d 932 (Fla. 4th DCA 1995); Evans v. State, 643 So.2d 1204 (Fla. 1st DCA), review denied, 652 So.2d 818 (Fla.1994); Valdez v. State, 504 So.2d 9 (Fla. 2d DCA 1986).
We agree with Taylor that the state failed to prove that he had the specific intent to participate in the robberies. Neither presence at the scene nor mere knowledge that an offense is being committed can be construed as participation in the crime. Christie. Additionally, driving the perpetrator to and from the scene or a display of questionable behavior after the fact is not sufficient to establish participation. Pack v. State, 381 So.2d 1199 (Fla. 2d DCA 1980). The state in this instance demonstrated that Taylor was present at the scene, and he was the driver of the car when it left the scene and when it was stopped. None of these factors, either individually or collectively, conclusively demonstrate Taylor aided and abetted Washington in the commission of these offenses. See R.H. v. State, 649 So.2d 299 (Fla. 2d DCA 1995); M.M. v. State, 627 So.2d 1269 (Fla. 2d DCA 1993). The state's evidence simply does not exclude the reasonable inference that Taylor was waiting for Washington to return from the Circle K store.
We, therefore, reverse Taylor's convictions for armed robbery.
SCHOONOVER, A.C.J., and PATTERSON, J., concur.