WARNER, C.J.
Appellant contests his conviction and sentence for trafficking in cocaine and conspiracy to traffic in cocaine, raising five issues on appeal. His main contention concerns the trial court’s admission of alleged hearsay statements of his co-defendant, Jose Gajate. Because some of the statements constituted non-hearsay verbal acts and those statements, when combined with the other non-hearsay evidence, sufficiently established appellant’s participation in a conspiracy to traffic in cocaine, the trial court did not err in admitting Gajate’s other co-conspirator hearsay statements. We thus affirm as to that issue and all other issues raised.
While working as a confidential informant (“Cl”), Harold Gomez was paged by an old acquaintance, Gajate, who inquired about buying a kilo of cocaine with the possibility of buying nine more. Gomez advised his controlling agent of the page, and they set up a meeting between Gomez and Gajate the next day to conduct the sale.
Gajate and Gomez met as planned in a parking lot. They talked about the quantity, price, and location of the deal. Gajate told Gomez that the money belonged to his “buddy” who would accompany him later when the transaction was conducted. Once Gajate purchased the first kilo, he said the “other people” would then have to approve the purchase of the other nine kilos. During their conversation, Gajate’s “buddy” paged him, and Gajate used Gomez’s cellular phone to return the page. Gomez overheard Gajate advise the caller that everything was ready for the transaction, and that they should all meet at the caller’s house to return and complete the deal. After finishing the call, Gajate told Gomez that his “buddy” (appellant) was the middleman (like Gajate) and another guy (Michael Green) was their client who owned the money. A BellSouth records custodian verified that the number Gajate dialed on Gomez’s phone belonged to Olga Arguelles at 1001 Northwest 25th Avenue in Miami.
Gajate then traveled to a residence at 1001 Northwest 25th Avenue in Miami. After twenty minutes inside, Gajate exited the residence with appellant; neither man carried anything. Gajate eventually returned to the previous parking lot with Green in the passenger seat and appellant *502 in the backseat, parking on the right side of Gomez’s SUV.
Gajate informed Gomez that he had the money for the deal. Gomez then told Ga-jate that the others had to remain behind, and Gajate agreed, stating that he could not have brought the money alone. Gajate returned to his car and leaned into the back seat where appellant handed him a bag full of groceries containing an open box with the money inside. It appeared to one of the surveillance agents that Gajate directed appellant to give him the bag.
After Gajate showed Gomez the money, the two men traveled across the street to a different location where the cocaine was located. Meanwhile, Green and appellant drove up and down several aisles in a nearby mall parking lot, passing several open spaces, and then returned to the original parking lot; the whole drive took five to seven minutes. One of the agents opined that “they were checking the area to see if anybody was watching them.”
Upon arriving at a residential area close to the parking lot, Gomez and a second Cl showed Gajate the kilo of cocaine. After testing the cocaine, Gajate said that it was good, but needed to show the kilo to his “buddy” and Green because they were the ones that had the last word on it. Gajate took possession of the cocaine and began walking back to Gomez’s vehicle. Law enforcement agents then moved in, capturing Gajate after he attempted to flee over a wall.
Other agents arrested Green and appellant after receiving word that the transaction had occurred and Gajate was in custody. Without anyone mentioning drugs, appellant said “why am I being arrested, I don’t have anything to do with drugs.” The officers found $3,000 in cash on appellant, and at the police station, appellant gave his address as 1001 Northwest 25th Avenue, Miami. While in the holding cell, appellant told Green, “[t]hen why didn’t you leave. We should have run.” He later asked Green, “Mike, how much do you think they’ll give us for conspiracy.”
The state charged appellant, Gajate, and Green by collective information with trafficking in cocaine and conspiracy to traffic in cocaine. Gajate was also charged with resisting arrest without violence. After a trial where Gajate did not testify, the jury returned a verdict of guilty on both the trafficking and conspiracy counts. The court then adjudicated appellant guilty and entered a written judgment and "written sentence for those two counts only.
If out-of-court statements are offered to prove the making or terms of a conspiratorial agreement, then they are “verbal acts” not excluded under the hearsay rule. See Charles W. Ehrhardt, Florida Evidence § 801.6 n. 4 (2001 ed.). These verbal acts prove the nature of the act, as opposed to proving the truth of the alleged statements. See Harris v. State, 544 So.2d 322, 323 (Fla. 4th DCA 1989)(en banc); Decile v. State, 516 So.2d 1139, 1140 (Fla. 4th DCA 1987). For example, the statements “I need eight” followed by the response “[n]o problem, come inside, I get you rocks,” were verbal acts because they constituted part of the underlying transaction. See id. at 1139-40; Stevens v. State, 642 So.2d 828, 829 (Fla. 2d DCA 1994)(“I need a dime.”). Even if the statement is ultimately used to prove the truth of the matter, it is still admissible as a verbal act. See Banks v. State, 755 So.2d 142, 144 (Fla. 4th DCA 2000), rev. granted, 779 So.2d 269 (Fla.2000). On the other hand, a statement to a police officer that a specific person is dealing cocaine at a specific place is not a verbal act because it is not part of the transaction. See Harris, 544 So.2d at 323-24.
*503 Here, some of the admitted hearsay statements were verbal acts, and some were not. Appellant objected on hearsay ground to Gajate’s statements concerning (1) the initial set up of the drug deal at the first meeting with Gomez, (2) that he had the money at the second meeting, and (3) that he needed to show the cocaine to Green and appellant before the transaction was completed because they had the last word. These statements were all part of the transaction and thus verbal acts, not inadmissible hearsay. However, some of Gajate’s statements were not verbal acts and were offered for the truth of the matter asserted: (1) appellant was the middleman, and (2) the money belonged to appellant or Green and he could not have brought it alone. Admission of these latter hearsay statements is justified under a different theory.
Section 90.803(18)(e), Florida Statutes (2000), is the co-conspirator hearsay exception, and it provides that the following hearsay is admissible:
A statement by the person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy. Upon request of counsel, the court shall instruct the jury that the conspiracy itself and each member’s participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.
The evidentiary rule thus “requires (1) that these statements be made during and in furtherance of a conspiracy, and (2) that independent evidence establish the conspiracy before the statements are allowed.” Brooks v. State, 787 So.2d 765, 773 (Fla.2001).
This court explained the review of co-conspirator hearsay statements in Christie v. State, 652 So.2d 932, 933 (Fla. 4th DCA 1995):
The threshold question to address is whether there was competent, independent evidence, without consideration of any hearsay statements of co-conspirators, to establish defendant as a participant in a conspiracy to traffic in cocaine. Before the jury could consider any hearsay evidence of the co-conspirators, the state must have established, by a preponderance of the evidence, through defendant’s actions or his statements or through other competent, independent evidence that defendant participated in a conspiracy. This court must examine whether there was “substantial evidence, free from the taint of hearsay, upon which the court could find, at least preliminarily, that a conspiracy existed and the person objecting to the hearsay statements was an active participant.”
(Citations omitted)(emphasis added)(quoting Verni v. State, 536 So.2d 1162, 1164 (Fla. 2d DCA 1988)).
 To establish a conspiracy and appellant’s participation in it, the state must prove “an express or implied agreement or understanding between two or more persons to commit a criminal offense,” and an intention to commit that offense. Sheriff v. State, 780 So.2d 920, 921 (Fla. 4th DCA 2001). Direct proof of the agreement is not necessary; it may be inferred from the circumstances. See Harris v. State, 450 So.2d 512, 513-14 (Fla. 4th DCA 1984). However, this circumstantial evidence must be consistent with a hypothesis of guilt, and inconsistent with every reasonable hypothesis of innocence. See McClain v. State, 709 So.2d 136, 138 (Fla. 1st DCA 1998). Thus, a defendant cannot be a conspirator by merely being present at the scene of the offense, driving to the scene knowing the purpose of the journey, or aiding and abetting in the commission of *504 the offense. See Sheriff, 780 So.2d at 921; Mickenberg v. State, 640 So.2d 1210, 1211 (Fla. 2d DCA 1994)(reversed conspiracy-conviction where defendant merely aided and abetted); Pennington v. State, 526 So.2d 87 (Fla. 4th DCA 1987)(reversed conspiracy conviction where defendant was merely present at the scene and aided in its commission without knowing the nature of the contraband transferred).
In this case, there was more than mere presence at the scene. The non-hearsay evidence, including Gajate’s verbal acts, established the existence of the conspiracy and appellant’s participation in it by a preponderance of the evidence. Gajate’s statement that appellant and Green needed to approve of the deal before it was complete, a verbal act, provided competent evidence from which the trial court could have concluded that appellant participated in the conspiracy. Admitting Gajate’s remaining co-conspirator statements was thus justified pursuant to section 90.803(18)(e).
Appellant also challenged his trafficking and conspiracy convictions, but competent, substantial evidence supports the jury’s verdict on each count. Further, the trial court did not abuse its wide discretion in refusing to give the standard accomplice jury instruction as to Gajate because he did not testify. See Machado v. State, 787 So.2d 112, 114 (Fla. 4th DCA 2001). While appellant argues on appeal that the instruction should have been given because the confidential informant, Gomez, testified, this argument was never made below and any error was not fundamental.
Appellant’s final contention is that the trial court improperly convicted him for the uncharged offense of resisting arrest. The trial court did mistakenly accept appellant’s plea to that charge, but no harmful error occurred as a result of this extraneous action. See generally State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Appellant was never adjudicated on that count. The court never entered an oral or written judgment or sentence, and no sentencing points will be assessed against him in the future based on that count.
Affirmed.
DELL and TAYLOR, JJ., concur.